461 P.2d 702

**PARK CENTRAL DEVELOPMENT CO.,**
an Arizona corporation, Appellant,

v.

**ROBERTS DRY GOODS, INC., an Arizona**
**corporation and Roberts Bros., an Oregon**
**corporation, dba Diamond's, Appellees.**

**No. 1 CA–CIV 984.**

Court of Appeals of Arizona.
Division 1.
Dec. 1, 1969.
Rehearing Denied Dec. 31, 1969.
Review Denied Feb. 3, 1970.

Gordon B. Hutchison, Phoenix, for appellant.

Ryley, Carlock & Ralston, by John C. Ellinwood, Phoenix, for appellees.

HOWARD, Judge.

The defendant-appellee Roberts Brothers operates a retail department store in Maricopa County, Arizona, under the name of "Diamond's". On or about April 10, 1956 the plaintiff-appellant and defendant, Roberts Dry Goods, Inc., as a lessor and lessee respectively, executed a lease of a store in the Park Central Shopping Center, Phoenix, Arizona.

Under the terms of the lease, in addition to the fixed minimum guaranteed rents, the defendant is obligated to pay to the plaintiff an annual percentage rent based on the gross sales as defined in the lease. The pertinent provisions of the lease are as follows:

"4. The term 'gross sales' as used herein shall be deemed to mean and in-

clude the aggregate gross amount received from the sales of merchandise, and charges for services performed, for which charge is made by Lessee, and by any other person, firm or corporation selling merchandise or performing services of any kind in, upon or from any part of the demised premises, or as a department of Lessee's business, or as a consessionaire, licensee or subtenant of Lessee, whether for cash or credit but there shall be excluded therefrom the following: Any fixed rental received by Lessee from its subtenants or concessionaires; refunds, credits or allowances to customers. * * *."

The parties stipulated as follows: That in connection with its retail business, Roberts Brothers uses the Sperry and Hutchinson Company cooperative cash discount system, or, what is commonly known as S & H Green Stamps. This trading stamp system is maintained under a contract with S & H. Roberts Brothers pays for the use of the stamps on the basis of $25.00 per 10,000 stamps, or the sum of ¼ cent for each stamp. The green stamps are furnished to Roberts Brothers which in turn issue them to its customers. The stamps are issued to the defendants' customers in connection with the purchase of all kinds of merchandise, except liquor, on the basis of one stamp for each ten cents purchased.

Under the trading stamp system the defendants issue S & H Green Stamps to those customers who pay cash at the time of purchase of merchandise and who take the receipt for such purchase to a special stamp window in the store to request the issuance of stamps to them based on the amount of their purchase. Approximately 15 per cent of the customers who are entitled to be issued the green stamps do not ask for them and, therefore, do not obtain them. Also, the defendants mail monthly statements to their credit customers, which statements set forth the dates and amounts due. If these credit customers make payment according to the terms specified in their monthly statements, the defendants, as a matter of course, mail green stamps to them based upon the amount of the payment made. If payment is made in person at the store by the credit customer on or before the due date shown on his monthly statement, such customer can go to the special stamp window and be issued green stamps, at his request, based upon the amount of payment shown on his receipt.

The defendants do not redeem the green stamps and do not operate a redemption center. S & H redeems the green stamps at any of its redemption stores in the Phoenix area or elsewhere. Redemption is made by exchanging the stamps for goods or merchandise in accordance with the redemption catalogues issued by S & H.

The question posed is whether or not money spent by the appellees for S & H Green Stamps constitutes "refunds, credits or allowances to customers" within the meaning of the lease. The lower court, in denying judgment to appellant, made findings of fact and found, among other facts, that:

" * * *

8. The issuance of S & H Green Stamps by Roberts Bros. to its customers is a discount for cash payment or for prompt payment within credit terms extended by Roberts Bros. to its customers.

9. The issuance of S & H Green Stamps by Roberts Bros. to its customers constitutes 'allowances to customers'."

A certified public accountant opined on behalf of the plaintiff-appellant that S & H Green Stamps do not constitute a "refund, credit or allowance to customers" and that the "weight of theory is in the direction of treating it as a selling expense." He further testified that the terms "cash discount" and "discount for cash" are synonymous.

The appellees also called a certified public accountant as a witness. He testified that the trading stamps did constitute a "refund credit or allowance to customers." This witness and the president of the appellees testified that the giving of trading stamps tended to improve cash collections of the company thereby reducing book-

keeping costs, collection costs, and bad debt costs. The said president also testified that the trading stamps constituted a merchandising strategy enabling appellees to capture a large share of the department store market.

An advertising expert called by the appellees, on cross-examination and in answer to the question as to whether or not he would classify S & H Green Stamps as a sales promotion device, answered:

"I would classify S & H Green Stamps as a *premium*. If you wished to use the words 'sales promotion' in the very broad sense in which it is sometimes used, it would fall into the category of premiums, something which is offered in addition to the normal merchandise and sales transaction to the extent that it has intrinsic value." (Emphasis added)

Appellees' certified public accountant, when asked by what other means there can be a discount for cash, answered:

"Well, by credit to buyers' account by merchandise, by gift certificate, by trading stamps—perhaps, by jawbreakers or licorice sticks."

Appellees also presented several "expert" witnesses who testified that the S & H Green Stamps did not constitute "advertising" because the names of the appellees did not appear on the stamps nor on the S & H signs on the premises.

■ It is axiomatic that the appellate court will not disturb the findings of fact of the trial court unless they are clearly erroneous. Tuab Mineral Corporation v. Anderson, 3 Ariz.App. 512, 415 P.2d 910 (1966); 16 A.R.S., Rules of Civil Procedure, Rule 52(a). However, the "unless clearly erroneous doctrine" applies only to the appellate review of findings of fact. It does not apply to the trial court's conclusions of law nor does it apply to findings of fact that are induced by an erroneous view of the law nor to findings that combine both fact and law when there is an error as to law. 5 Moore's Federal

Practice § 52.03(2) (2d ed. 1951); 2B Barron & Holtzoff, Federal Practice and Procedure § 1137 (Rules ed. Wright 1961).

■■ The so-called "findings of fact", as previously set forth, are the ultimate decisions as to the meaning of the lease and as such they constitute conclusions of law or, at the most, mixed questions of law and fact. We are, therefore, not bound by the "findings" of the trial court. Assuming arguendo, that these findings are findings of fact, we believe them to be clearly erroneous within the meaning set forth in Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962), wherein the Court defined the term "clearly erroneous" as when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[1]

■ The courts will, if possible, so construe a contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082 (1952). The intent of the parties, as ascertained by the language used, must control interpretation of the contract. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1967).

The facts of this case, except for the testimony of the so-called expert witnesses are almost identical to the facts in State Tax Commission v. Ryan-Evans Drug Stores, 89 Ariz. 18, 357 P.2d 607, 90 A.L.R. 2d 332 (1961). Among other things the court, in this case, stated:

"* * * The Legislature has only said 'cash discounts allowed and taken' are not taxable This simply means cash discounts, that is, an actual cash reduction in price for prompt payment. It is an inescapable conclusion that the Legislature did not intend to tax the retailer on money he did not receive; but on the other hand, the Legislature did not intend to allow the retailer to pay tax on something less than that which he did

---

1. The court quoted from United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

receive. To hold that 'green stamps' are a 'cash discount' would accomplish this. The obvious fact is that the company's plan is a promotion scheme designed to induce the public to purchase merchandise from its dealers exclusively, and it appears that even though the company calls its elaborate plan a 'co-operative cash discount system,' in reality, it is nothing more than a bonus or unique and attractive form of advertising and as such constitutes an ordinary business expense."

■ We think that the intent of the parties in this contract is similar to the intent of the Legislature as deduced by the Supreme Court in the *Ryan-Evans* case. It seems clear to us that the parties did not intend to base rental payments upon money which the appellees did not receive; but on the other hand, it seems equally clear that the parties did not intend to allow the appellees to pay rent on something less than what it actually did receive. The parties intended that if the merchandise purchased was taken back to the store, or if there was an actual reduction in or abatement of the price of the goods in return for prompt payment, then there would be an exclusion from gross sales. We believe that the contract shows that the parties intended the words "allowance to customers" to mean a "discount". In fact, Webster's New International Dictionary (2d ed.) defines "discount" as "something taken off or deducted."

We do not believe that the parties intended that jawbreakers or licorice sticks along with gift certificates and trading stamps were to be deducted from the gross sales.

If we were to follow the reasoning of the appellees, free parking at "Stop & Shop" parking lots and free babysitter services provided to the customers for cash payment would also be deductible from gross sales. Such free services would be in the same category according to appellees' experts, i. e., they would be "discounts for cash." This court, however, refuses to give such a meaning to the provisions of the lease. The subject of trading stamps did enter the minds of the parties since paragraph 4 of the lease contains the following sentence: "The redemption of trading stamps shall not be included in the computation of gross sales."

The witnesses testified that this sentence was included since the parties contemplated that there might be a stamp redemption center in the store itself. This contingency never occurred. It is significant that there is a specific reference to trading stamps in this context but no specific reference to the stamps as being a deduction from gross sales.

We parenthetically note that if we were to uphold the contention of the appellees, the result would be that the appellant would in effect be paying for part of the promotional venture of the appellees, including part of the profit which S & H makes from the $25.00 per 10,000 stamps which S & H receives from appellees, a result hardly to have been intended by the phrase "refunds, credits or allowances to customers."

This court believes that the characterization of S & H Green Stamps by our Supreme Court in the *Ryan-Evans* case is apropos to this case. They are a promotional device and constitute an ordinary business expense.

In their pretrial statement the parties stipulated that if the trial court found that the appellees could not deduct the cost of S & H Green Stamps from the gross sales, then other additional issues were to be decided by the court. Since we have found that appellees were not justified in deducting the cost of the S & H Green Stamps from gross sales, the other issues still remain to be determined by the lower court.

The judgment of the lower court is reversed and the case is remanded to the trial

court for determination of the remaining issues.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.