*669 P.2d 90*

**Stanley P. ABRAMS,**
**Plaintiff/Appellee/Cross-Appellant,**

v.

**HORIZON CORPORATION, a Delaware**
**corporation,**
**Defendant/Appellant/Cross-Appellee.**

**No. 2 CA–CIV 4292.**

Court of Appeals of Arizona,
Division 2.

Oct. 7, 1982.

Rehearing Denied Nov. 22, 1982.

Review Granted Dec. 21, 1982.

Miller & Pitt, P.C. by Gerald Maltz, Tucson, for plaintiff/appellee/cross-appellant.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Michael J. Meehan and Roger D. Smith, Tucson, for defendant/appellant/cross-appellee.

## OPINION

HOWARD, Chief Judge.

The main issue in this case is whether the trial court erred in awarding treble damages pursuant to A.R.S. § 23–355 when Horizon Corporation withheld appellee Abrams' commissions after Abrams made an excessive demand for commissions upon the termination of his employment.

The case was tried before the court sitting without a jury, which made 31 findings of fact some of which are in reality conclusions of law or mixed findings of law and fact and six conclusions of law, some of which are findings of fact. Our review is thus circumscribed by the following legal tenets. An appellate court will not disturb the findings of fact of the trial court unless they are clearly erroneous. This doctrine only applies to appellate review of findings of fact, not to the trial court's conclusions of law, nor to findings that combine both fact and law when there is error as to the law. *Park Central Development Company v. Roberts Dry Goods, Inc.*, 11 Ariz.App. 58, 461 P.2d 702 (1969).

The findings of fact disclose the following: On June 1, 1976, Abrams and Horizon Corporation entered into a written employment contract. It provided, inter alia, that Abrams was to be vice president of Horizon Corporation in charge of sales, and was to be paid a salary of $51,000 per year plus commissions of ½% on all home or land sales made by sales personnel under Abrams' supervision, excepting sales made to company personnel. The parties also agreed that "commissionable sales contracts" were bona fide sales contracts written during the term of the employment agreement by a sales representative or broker on property owned by Horizon Corporation. Abrams was also put in charge of a sales operation known as Horizon Realty. It sold land owned by third persons.

Abrams began receiving his commissions for land sold which was owned by Horizon Corporation but he did not receive commissions on sales involving Horizon Realty. About one year after executing the original employment contract, he sent a memo to the president of Horizon, Sidney Nelson, and suggested that he ought to be receiving commissions on the Horizon Realty sales. Nelson thought that it would be fair for him to do so and asked Abrams to compile statistics on the Horizon Realty sales so that they could arrive at the amount of commission Abrams should receive. Abrams never provided this information and two more years passed with Abrams receiving only commissions of sales of land owned by Horizon Corporation. During this period of time Nelson and Abrams tried to negotiate a new contract which included, inter alia, a provision for commission on Horizon Realty sales. However, no new contract was ever executed. Furthermore, during all this time, Abrams never made any demands on anyone for commissions on Horizon Realty sales.

Abrams remained in charge of Horizon Corporation's entire sales operation until January 31, 1979, when Nelson issued a memorandum which elevated Abrams to executive vice president and relieved him of his duties regarding the Texas and New Mexico operations of Horizon Corporation. However, Nelson made verbal representations to Abrams that he should proceed as before with regard to his duties concerning the Texas and New Mexico operations and Abrams relied upon statements made that he would continue to receive commissions on sales of Horizon Corporation's Texas and New Mexico properties.

In the fall of 1979, the Horizon Corporation's corporate structure was reorganized as a result of a shareholders' proxy fight. A new board of directors was elected in early 1980 and a new president, Donald White, was appointed. While Abrams was originally asked to remain with Horizon Corporation in his position as vice president, his at-will contract was never modified. In February 1980 Abrams asked Kenneth Badertscher, the comptroller of Horizon Corporation, to compute the commissions accrued for the first six months of the current fiscal year. Badertscher computed the commissions to be in the amount of $34,287.14.

On March 19, 1980, Abrams was discharged from his job by White. He was issued a severance paycheck for four weeks plus unused vacation pay. At the time that Abrams was discharged Horizon Corporation was aware that it owed him at least $34,287.14 as of November 30, 1979.

Eight days after the discharge, Abrams made a demand for back commissions. This demand totaled $153,735 which consisted of $118,735 for commissions from Horizon Realty sales and $35,000 in commissions from Horizon Corporation sales.

Horizon Corporation did not pay or make a valid tender of the $34,287.14 and when it failed to meet Abrams' demands, he filed this lawsuit for commissions due on Horizon Realty sales, the commissions due on the Horizon Corporation sales and for treble damages.

After making its findings of fact the trial court concluded that the contract of June 1, 1976, clearly and unambiguously entitled Abrams to commissions of ½% on all of the defendant's home and land sales, excluding "Horizon Realty" sales from June 1, 1976, to March 19, 1980. It also concluded that even if the contract of June 1 were ambiguous, the proper construction of its terms would be contrary to the plaintiff's contentions that Horizon Realty sales were to be included because (1) defendant's course of dealing and performance with respect to such sums was to pay commissions to plaintiff only on sales of Horizon Corporation land, which for the fiscal year ending May 31, 1979, included Texas and New Mexico sales; (2) plaintiff was assigned to perform and did perform supervisory duties with respect to all sales, including Horizon Realty sales and including sales in Texas and New Mexico after January 31, 1979, and (3) that after this possible ambiguity arose of not including commissions on Horizon Realty sales, the plaintiff and defendant, through its president, Nelson, never agreed that the plaintiff was also entitled to a commission of ½% of the Horizon Realty sales. The trial court also concluded that Horizon was estopped to assert that the plaintiff's commission rights to Texas and New Mexico sales terminated January 31, 1979, when duties of the executives were reorganized, and that defendant was indebted to plaintiff in the sum of $46,086.00 for commissions on Horizon Corporation land sales and that since Horizon Corporation failed to pay the $34,287.14, as to which there was no reasonable dispute as to whether it was owed, that Horizon had violated A.R.S. § 23–355 and was liable for treble damages. The trial court awarded Abrams attorney's fees in the sum of $21,000.

Appellant contends the trial court erred in assessing treble damages and awarding attorney's fees. Appellee Abrams has filed a cross-appeal and alleges that the trial court erred in not finding that he was entitled to commissions on the Horizon Realty sales. For the sake of clarity, we shall discuss the cross-appeal first.

In his cross-appeal, appellee contends the trial court erred in (1) finding that the employment agreement unambiguously excluded commissions from Horizon Realty sales; (2) not finding that it unambiguously included such commissions, and (3) finding that if the contract were ambiguous it did not entitle him to commissions for such sales because of the conduct of the parties.

█ We are unable to agree with appellee's contention that the contract unambiguously includes commissions for Horizon Realty sales. In order to arrive at such a conclusion one must, as appellee does, focus on only one part of the contract, to-wit, that part which states that Abrams shall be paid:

"Commissions of one-half percent (½%) on all home or land sales made by sales personnel under Abrams' supervision ...."

A contract must be read as a whole. *C & T Land & Development Company v. Bushnell,* 106 Ariz. 21, 470 P.2d 102 (1970).

Section A–1 of the employment agreement defines "commissionable sales contract" as: "... bona fide sales contracts written during the term of this Agreement by a sales representative or broker on properties of HORIZON, which are made in accordance with the terms of this Agreement and accepted and confirmed by HORIZON at its home office in Tucson, Arizona." This definition of commissionable sales is incorporated into the provisions dealing with Abrams' commissions under ¶ B(1)(b)(4), which states:

"Notwithstanding the above, commissions earned during any fiscal year (ending May 31st each year) shall be limited to $72,000; should this Agreement be terminated during a fiscal year, commissions earned during such fiscal year shall not exceed $6,000 for each month or part thereof to the date of termination. This provision shall be implemented by crediting Abrams' commission account with *all commissionable sales,* and paying thereon in accordance with this paragraph (b) until the aggregate of such payments reaches the maximum amount provided for above." (Emphasis added)

Contrary to appellee's contention, we agree with the trial court's finding that the contract unambiguously excluded commissions for sales made by Horizon Realty.

Assuming arguendo that the contract is ambiguous, the trial court was correct in its reference to the conduct of the parties and in finding that this conduct clearly showed that commissions for Horizon Realty sales were not included in the employment agreement. The cases are legion which hold that evidence of the practical interpretation and construction by the parties is admissible to aid in choosing the

meaning to which legal effect will be given. 3 Corbin on Contracts, § 558; 17A C.J.S. Contracts § 325(1). The findings of fact by the trial court which we have previously recited and the record clearly demonstrate that the parties never regarded the employment agreement as providing for commissions to Abrams on Horizon Realty sales.

The trial court's sole reason for finding that treble damages were appropriate was its conclusion that there was no good faith dispute as to part of the commissions due, to-wit, the sum of $34,287.14 because Horizon Corporation was "aware" that this amount was due.[1] We believe this conclusion is the result of erroneously construing A.R.S. § 23–352, which states in part:

"No employer may withhold or divert any portion of an employee's wages unless one of the following applies:

\* \* \* \* \* \*

3. There is a reasonable good faith dispute *as to the amount of wages due* ...." (Emphasis added)

First a word about the construction of this statute. Statutes providing for the immediate payment of wages and imposing treble damages for the failure to do so are penal in nature. *Otwell v. Howard Lumber & Supply Company, Inc.,* 283 So.2d 826 (La.App.1973); *Lotz v. Missouri Distributing Company,* 387 S.W.2d 179 (Mo.App. 1965). In Arizona, the common law rule that penal statutes shall be strictly construed has no application. Instead, they are to be construed according to the fair import of their terms, with a view to effect their object and to promote justice. A.R.S. § 1–211(C). The statutory justification for not paying wages set forth in A.R.S. § 23–352(3) by its clear and unambiguous language applies to the facts of this case. Appellee wants the statute to be construed to read that if the employer is "aware" that a portion of the wages are due, it must pay or tender that amount in order to avoid the statutory penalty. Were we to so hold, we would be completely rewriting the statute. Had the legislature intended the statute to

---

1. The word "aware" was used by the trial court in finding that there was no dispute as to the $34,287.14.

so read it could easily have done so as did California in enacting West's Ann.Labor Code § 206, which states: "In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, *leaving to the employee all remedies he might otherwise be entitled as to any balance claimed.*" We note that even the California statute requires a concession on the part of the employer and not merely an "awareness" that an amount is due.

As authority for his position, appellee relies on *Duhon v. Prof. Erny's Music Company, Inc.,* 328 So.2d 788 (La.App.1976). There, the employer admitted that it owed part of the wages and the court held that under such circumstances, it must make a tender of the amounts admittedly due. We find this case to be unpersuasive for two reasons. First of all, Louisiana does not have a statute such as our A.R.S. § 23–352(3). Instead, it relies on "equitable defenses" which have been developed by the courts. Secondly, there is no finding here that appellant admitted that it owed the $34,287.14. Indeed, the record does not disclose any such admission.

We find that there was a good faith dispute as to the amount owed based upon the underlying contract which the trier of fact found supported Horizon's failure to pay.

█ When this lawsuit was filed, A.R.S. § 23–355 provides that the employee could recover, in addition to treble damages, reasonable attorney's fees. Prior to the time the case was tried, the statute was amended and this provision was deleted. Appellant contends that since the court erred in awarding treble damages, it also erred in awarding attorney's fees under the statute because it was amended prior to trial. This argument ignores A.R.S. § 12–341.01 which allows the court, in its discretion, in any contested action arising out of a contract to award attorney's fees. We presume that the trial court here entered its award of attorney's fees pursuant to A.R.S. § 12–341.01 rather than A.R.S. § 23–355 as it existed prior to its amendment in 1980.

However, the amount that it awarded, $21,000, was apparently based upon a recovery which included treble damages and we therefore think that it is proper for the trial court to reconsider what amount, if any, it now wishes to award.

That part of the judgment which awards the appellee treble damages is vacated and set aside together with any sums of interest awarded in respect thereto. That part of the judgment which awards attorney's fees in the sum of $21,000 together with interest on such attorney's fees is vacated and set aside and the case is remanded to the trial court with directions to enter judgment in favor of appellee in the sum of $46,086.00 plus the appropriate interest, court costs and attorney's fees if the trial court believes an award of attorney's fees is appropriate.

HATHAWAY, J., and WILLIAM E. DRUKE, Superior Court Judge, concur.

NOTE: Judge Ben C. Birdsall having recused himself from consideration of this matter, Judge William E. Druke was appointed to sit in his stead and participate in the determination of this matter.