NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

BOBBY G. CASON, *Petitioner/Appellee,*

*v.*

KRISTIN L. CASON, *Respondent/Appellant.*

No. 1 CA-CV 14-0351 FC
FILED 2-25-2016

Appeal from the Superior Court in Maricopa County
No. FN2012-094036
The Honorable Emmet J. Ronan, Retired Judge

**AFFIRMED**

COUNSEL

Wilkins Law Firm PLLC, Phoenix
By Amy M. Wilkins, Heather Coe-Smith
*Counsel for Petitioner/Appellee*

Kristin L. Cason, Queen Creek
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

**¶1**        Kristin Cason (Wife) appeals the division of property in the decree of dissolution of her marriage to Bobby Cason (Husband).  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In January 2006, Wife purchased real property in Queen Creek, and the parties founded a business, Silver Linings Hunters and Jumpers (Silver Linings), for the purpose of raising, training, and boarding horses.  Husband and Wife were married in April 2006 and began living at and operating Silver Linings from the Queen Creek property.  At the time of their marriage, Wife also owned real property in Gilbert.

**¶3**        Over the next six years, Husband made improvements to both properties, paid utility bills, and worked twenty to thirty hours per week for the business.  Meanwhile, Wife comingled business funds, rental income from the Gilbert property, and community income in accounts held by Silver Linings, which she used for business, personal, and community expenses, including the mortgages on both properties.

**¶4**        The parties separated in July 2010 and pursued counseling.  Although Husband was removed from Silver Linings' bank account and did not receive any distributions from the business after July 2010, he continued to work for Silver Linings until Wife obtained an order of protection in July 2012.  Husband thereafter filed a petition for dissolution of marriage in October 2012.

---

[1]        We view the facts in the light most favorable to upholding the family court's decree.  *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998) (citing *Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987)).

¶5        During the course of discovery, the family court ordered the parties to complete a business valuation of Silver Linings; Wife refused. In March 2013, Husband filed a motion to compel Wife to respond to "standard" discovery requests, including requests for production of bank statements, business records, and mortgage information, which the court granted after Wife openly admitted in her response that she "refuse[d] to share any documents or related items." Wife did not comply. Following a settlement conference in June 2013, the parties agreed Husband would pay for appraisals of the Queen Creek and Gilbert properties, subject to reallocation of the cost at trial, and Wife would permit the appraiser access to the properties. However, Wife did not cooperate, and the appraisals were not completed by the start of trial. Wife had also agreed to disclose the accounting files for Silver Linings, as well as invoices and receipts to support the asserted debts and expenses of the business. Instead, Wife gave Husband summaries of her business activities, without any supporting documentation.

¶6        The family court held a two-day trial in August and November 2013. After taking the matter under advisement, the court entered a final decree of dissolution. Within the decree, the family court expressed its difficulty in valuing Husband's interest in the community assets as a result of Wife's refusal to participate in the discovery process, stating:

> Wife did not cooperate in any meaningful way in the discovery process in this case. She did not disclose a single financial account. She refused to participate in a business evaluation of the parties' business, Silver Linings Hunters/Jumpers, LLC. She refused to answer any interrogatories or requests for information. She refused to provide any financial records related to Silver Linings. She never disclosed a single exhibit to [Husband]'s counsel that she intended to use at trial. She refused to provide information about the mortgage and payment history of the two pieces of real property that she owned prior to the marriage. She continued to refuse to comply in any meaningful way in the discovery process even after being ordered to do so.
>
> . . .
>
> [Wife] has candidly admitted in some of her pleadings that she had not cooperated with discovery requests because she

3

didn't feel Husband was entitled to any of the information because they had already divided their property and debt in August 2010. Her lack of cooperation in the discovery process has made it very difficult for the Court to make a fair and equitable division of the community property and debts. To the extent that the Court's findings and orders set forth below on the remaining disputed issues results in an unequal, or unfair, division of property and debt, it is almost entirely the result of [Wife's] stubbornness and refusal to cooperate in the basic discovery process that is followed in any type of litigation.

¶7        The family court awarded Husband: (1) a community interest in the value of Silver Linings in the amount of $94,184; (2) a lien against the Queen Creek property in the amount of $57,546; and (3) one-half of the amount paid toward the mortgage for the Gilbert property during the parties' marriage. Wife filed a motion for new trial, which was denied. Wife timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] -2101(A)(1) and (A)(5)(a).

## DISCUSSION

### I. Silver Linings

¶8        Wife argues the family court's valuation of Silver Linings was arbitrary and did not take into account the business expenses and tax returns or her own testimony regarding its finances. "'The valuation of assets is a factual determination that must be based on the facts and circumstances of each case' . . . and [we] 'will not disturb [the] trial court's factual findings unless clearly erroneous.'" *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012) (quoting *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996), and *Hrudka v. Hrudka*, 186 Ariz. 84, 92 (App. 1995)). A finding of fact is clearly erroneous when "'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Park Cent. Dev. Co. v. Roberts Dry Goods, Inc.*, 11 Ariz. App. 58, 60 (1969) (quoting *Merryweather v. Pendleton*, 91 Ariz. 334, 338 (1962)). On this record, we find no error.

---

[2]        Absent material changes from the relevant date, we cite a statute's current version.

¶9        After concluding Silver Linings was a community business, the family court admitted "[t]he lack of documentation . . . make[s] it impossible to arrive at any type of accurate assessment of business income." Because Wife did not present any evidence to support her claims, the court considered Husband's request that he instead be awarded "one half of the funds that were received from the business from the time of the parties' separation in August 2010 until 2013 as his interest in the business," in the amount of $188,432.44. To support this request, Husband submitted statements for two accounts in the name of Silver Linings that received deposits of more than $480,000 between August 2010 and 2013.

¶10       In reaching its decision, the family court explained:

> The figures presented by [Husband] from a review of the bank accounts reflect business "deposits". They do not account for any reasonable business expenses that would necessarily [have] been deducted from the receipts in order to determine the business income. . . . However, common sense tells you that the "receipt" figure is not the income that was received by the business.

The court awarded Husband "a community interest in the value of the business" in the amount of one-half of what he requested — $94,184. In doing so, the court apparently estimated, absent evidence from Wife as to the actual value of Silver Linings' expenses, that half of the business's income was used to pay expenses.[3] *See Murren v. Murren*, 191 Ariz. 335, 337, ¶ 8 (App. 1998) ("'[B]ecause no fact findings were requested, we must assume that the trial court resolved every issue of fact in a way that supports the judgment.'") (quoting *Crye v. Edwards*, 178 Ariz. 327, 328 (App. 1993)). It then divided the remaining amount — Silver Linings' profits — equally between the parties.

---

[3]     This conclusion is consistent with the profit and loss summaries provided by Wife, Wife's testimony that approximately half of the business's income was used to pay expenses, and Wife's affidavit of financial information reflecting monthly income from Silver Linings of $8,000.

**¶11**       The family court has discretion to rely on various methods of valuation. *See Kelsey*, 186 Ariz. at 51 (holding that the failure to calculate the value of an asset according to standard methodology affects only the weight of the evidence, not its admissibility) (citing *Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 239 (App. 1990)); *see also Gutierrez*, 193 Ariz. at 347-48 (noting the trial court has broad discretion to choose between conflicting evidence). Here, although not calculated via a traditional method of business valuation, the figure the family court arrived at is supported by Husband's testimony and evidence, and therefore, cannot be arbitrary.[4] *See United Cal. Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 304 (App. 1983) ("An owner of property has, by definition, knowledge of the components of value that are useful in ascertaining value, and an owner, no less than an 'expert,' can base his opinion of value on that knowledge."); *Moore v. Title Ins. Co. of Minn.*, 148 Ariz. 408, 413 (App. 1985) ("A finding of fact cannot be 'clearly erroneous' if there is substantial evidence to support it, even though there might be substantial conflicting evidence.").

**¶12**       Although Wife may have presented some evidence and testimony suggesting a different valuation,[5] we find no fault with the family

---

[4]       Although characterized as a portion of the business value, the award to Husband could also represent his share of the income from the community business during the parties' separation. Thus, an additional basis to affirm the family court exists in that Husband is entitled to an equitable share of the income generated from the community business during that period. *See* A.R.S. § 25-211(B) ("[A] petition for dissolution of marriage . . . does not . . . alter the status of preexisting community property [or] [c]hange the status of community property used to acquire new property or the status of that new property as community property."); *Schickner v. Schickner*, 237 Ariz. 194, 201, ¶ 30 (App. 2015) (noting profits derived from existing community assets are subject to equitable division); *see also* ARCAP 13(b) (stating the appellate court may affirm judgment based on any grounds properly presented in the record); *Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4 (App. 2008) ("[W]e will affirm the court's ruling on any legal theory supported by the record.") (citing *Cross v. Cross*, 94 Ariz. 28, 31 (1963)).

[5]       Wife does not suggest an alternate calculation or identify any trial testimony or exhibit that would support an alternative valuation, and we will not scour the record for evidence to contradict the family court's findings. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 343 (App. 1984) ("'The adversary system of dispensing justice is effective only in the

court's approach under the circumstances and will not second-guess its determination of witness credibility and the weight given to conflicting evidence. *Gutierrez*, 193 Ariz. at 347-48 (citing *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85 (App. 1995)). This is particularly true because the lack of sophistication in the court's methodology was caused by Wife's own "stubbornness and refusal to cooperate in the basic discovery process." *See supra* ¶ 6. To that extent, Wife has invited any purported error, and we will not consider it. *Schlecht v. Schiel*, 76 Ariz. 214, 220 (1953) ("By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error."), *abrogated in part on other grounds as recognized in A Tumbling-T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552, ¶ 23 (App. 2000).

## II. Queen Creek Property

**¶13**        Wife next argues the family court erred in calculating the amount of the lien imposed in favor of Husband against the Queen Creek property because the court did not apply a formula that considered the value of the property at the time of dissolution. Valuation is, again, a question of fact, which we review for an abuse of discretion. *See supra* ¶ 8.

**¶14**        In *Valento v. Valento*, this Court articulated a formula to calculate the value of an equitable lien against one spouse's separate property where the community contributes to the asset but the property nonetheless has negative equity at the time of dissolution. 225 Ariz. 477, 482, ¶ 16 (App. 2010). That formula requires figures for the depreciation in value of the property during the marriage, the value of the property on the date of marriage, and the community contributions to the principal or market value to establish a lien amount. *See id.* Here, however, the family court specifically stated it "[wa]s unable to apply any type of formula . . . because Wife refused to provide any of the information necessary for that process." In the absence of the required information, the court awarded Husband one-half the value of the mortgage and utility payments made by Wife from community funds towards the Queen Creek property — $57,546.

---

event that there is some substantial advocacy and effort on both sides of a question to be judicially determined.' . . . We are not required to assume the duties of an advocate and search voluminous records and exhibits to substantiate an appellant's claims.") (quoting *State v. Turovh*, 3 Ariz. App. 252, 254 (1966), and citing *Clemens v. Clark*, 101 Ariz. 413, 414 (1966)).

¶15       While application of the *Valento* formula is certainly preferable where possible, the family court retains discretion to value assets in accordance with the facts and circumstances of each case. *See Walsh*, 230 Ariz. at 490, ¶ 9 (quoting *Kelsey*, 186 Ariz. at 51). Here, Wife did not provide the information required to complete the calculation at trial, does not identify within the record where these figures might be found, and does not provide figures for a *Valento* calculation within her opening brief. The family court's adoption of a simple reimbursement scheme was a reasonable alternative.[6] *Cf. Drahos v. Rens*, 149 Ariz. 248, 250 (App. 1985) (noting a "value-at-dissolution formula" is preferable to an "amount-spent formula" because the latter does not fully account for the enhanced value of the property).

¶16       On this record, we conclude the family court did not abuse its discretion.

## III.  Gilbert Property

¶17       Finally, Wife argues the family court erred in finding Husband was entitled to any portion of the value of the Gilbert property because, she asserts, the property "supported itself" through rent payments throughout the marriage. Whether a party is entitled to some portion of his spouse's separate property is a mixed question of law and fact, which we review *de novo*. *See Valento*, 225 Ariz. at 481, ¶ 11. Although we draw our own legal conclusions, we will accept the family court's findings of fact unless they are clearly erroneous. *Id.* (citing *Hrudka*, 186 Ariz. at 91).

¶18       Here, the family court specifically found community funds were expended on the Gilbert property in the form of mortgage payments, taxes, improvements, maintenance, and upkeep. This finding is supported by the record. The Gilbert property was rented out, and Wife deposited the proceeds into a community account. When mortgage payments on separate property are made from commingled funds, we presume community funds were used. *Drahos*, 149 Ariz. at 251. Wife did not present clear and

---

[6]       To Husband's credit, he attempted to complete the *Valento* formula within his closing argument, but candidly admitted he was unable to provide an accurate calculation because Wife did not disclose any information regarding the property's second mortgage. Using only the limited information Wife had provided, the value of Husband's lien, calculated under *Valento*, was $97,037.67 — nearly twice what the family court ultimately awarded him.

satisfactory evidence that the rent deposits retained their character as separate property after being deposited into the community account. *See Evans v. Evans*, 79 Ariz. 284, 287 (1955) ("The law furnishes no rule that will unscramble and separate" separate funds from community funds where they are "so mixed that no intelligent segregation can be made."); *Franklin v. Franklin*, 75 Ariz. 151, 155 (1953) (holding rent from separate property becomes a community asset where the spouse "ma[kes] no effort to keep the income from her separate property apart from the community funds").

**¶19**        The evidence, viewed in the light most favorable to upholding the family court's ruling, establishes that rental proceeds from the Gilbert property were comingled with, and became, community property, which Wife then used to make the mortgage payments on the Gilbert property. And, Arizona has long-recognized the community's right to an equitable lien against separate property where, as here, community funds are used to pay the mortgage on the separate property. *See Drahos*, 149 Ariz. at 249-50; *see also* A.R.S. § 25-318(E)(1) (allowing a court to "impress a lien on the separate property of either party or the marital property awarded to either party in order to secure the payment of [a]ny interest or equity the other party has in or to the property"). The family court's finding that community funds were used to pay the mortgage on the Gilbert property is supported by the record, and we find no error in the award to Husband of one-half of the amount paid toward the mortgage for the Gilbert property during the parties' marriage.

**CONCLUSION**

**¶20**        The decree of dissolution is affirmed.[7]

**¶21**        Both parties ask for an award of attorneys' fees on appeal pursuant to A.R.S. § 25-324. Wife does not qualify for an award of fees because she is not represented by counsel on appeal. *Connor v. Cal–Az*

---

[7]        In her opening brief, Wife suggests the family court abused its discretion in excluding Wife's evidence from trial. Because she did not support this argument within her brief by citing to the record or legal authority, it is waived. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) (noting that the failure to argue a claim in the opening brief constitutes abandonment and waiver) (citing *State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004), and *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996)); *Carrillo v. State*, 169 Ariz. 126, 132 (App. 1991) ("Issues not clearly raised and argued on appeal are waived.") (citing *Jones v. Burk*, 164 Ariz. 595, 597 (App. 1990)).

*Props., Inc.*, 137 Ariz. 53, 56 (App. 1983) ("[T]he presence of an attorney-client relationship is a prerequisite to the recovery of attorneys' fees."). In our discretion, we decline Husband's request. But, as the prevailing party, Husband is awarded his costs on appeal upon compliance with ARCAP 21(b).



Ruth A. Willingham · Clerk of the Court
F I L E D : ama