240 P.3d 1239

**In re the Marriage of Jill VALENTO, Petitioner/Appellee/Cross Appellant,**

v.

**Marvin VALENTO, Respondent/Appellant/Cross Appellee.**

**No. 1 CA–CV 09–0273.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 23, 2010.

The Murray Law Offices, P.C. By Stanley D. Murray, Phoenix, Attorney for Petitioner/Appellee/Cross Appellant.

The Law Office of Carrie M. Wilcox By Carrie M. Wilcox, Phoenix, Attorney for Respondent/Appellant/Cross Appellee.

## OPINION

SWANN, Judge.

¶ 1 This case presents a question of first impression: To what extent can a marital community claim an equitable lien against a spouse's sole and separate property when community funds have contributed to the equity in the property and declining market conditions have nonetheless reduced the property's overall value? We hold that community contributions to sole and separate property create equitable lien rights even in a declining market, and define below the method by which the value of the lien should be calculated.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Marvin Valento ("Husband") and Jill Valento ("Wife") married in 1999. During their marriage, the parties acquired multiple properties.[1] The properties included the marital residence (the "27th Place property"), rental properties and a condominium in Minnesota (the "Minnesota property"). During the marriage, Husband signed a disclaimer deed that recognized the 27th Place property as Wife's sole and separate property. Three of the rental properties and the Minnesota property were titled jointly.

---

1. Both parties worked in the real estate profession and had real estate licenses.

¶ 3 After a trial on Wife's September 2008 petition for dissolution, the superior court determined that an equitable lien of $200,000 attached to the 27th Place property. The court also determined the value of the rental properties, and used the results of its calculations in support of the final division of property. Finally, the court concluded that the Minnesota property was Husband's sole and separate property.

¶ 4 Wife's motion for new trial was denied. Husband appealed from the court's determination of the value of the lien against the 27th Place property and of the rental properties. Wife cross-appealed, arguing that no equitable lien existed against the 27th Place property and that the court should have divided the Minnesota property as a community asset. We have jurisdiction pursuant to A.R.S. § 12–2101(B) and (F)(1) (2003).

## DISCUSSION

### I. EQUITABLE LIEN

¶ 5 Despite the parties' expertise in real estate transactions, the evidence presented to the superior court concerning the initial cost, sources of funds and market value of the 27th Place property was both conflicting and sparse. At trial, Wife testified she purchased the 27th Place property in 2005 for $1.2 million. Wife made a $560,000 down payment from her separate funds and obtained a mortgage of $650,000. During the marriage, the parties paid down the principal balance on the mortgage with approximately $200,000 of community funds. According to Wife, the outstanding mortgage balance at the time of trial was approximately $400,000.

¶ 6 Husband characterized the transaction differently, testifying that the 27th Place property was purchased for $384,000 as a vacant lot subject to the disclaimer deed, but community funds were used to build the home and improve the property. According to Husband, the property increased in value during the marriage. Husband also stresses on appeal that the disclaimer deed he signed

disavowed any "past and present," but not future, interest in the property.[2]

¶ 7 Neither party submitted documentary evidence in support of their respective characterizations of the transaction. Based on the record before it, the superior court declined to treat the land purchase and construction as two separate transactions, adopting instead Wife's view that the acquisition of the residence was a unitary transaction involving her sole and separate property. We do not disturb this finding. *See Gutierrez v. Gutierrez,* 193 Ariz. 343, 347, ¶ 13, 972 P.2d 676, 680 (App.1998) (we defer to the family court's determination of witness credibility). The disclaimer deed therefore defined the character of the interest in the entire property, including the house.

¶ 8 Making the superior court's task more difficult was the fact that neither party presented significant evidence concerning the property's value at the time of trial—a critical fact that the parties dispute and that the court ultimately did not determine. At trial, Husband submitted a year-old appraisal that valued the property at $1.65 million. He conceded, however, that since the time of the appraisal the real estate market had declined approximately thirty percent in value. Husband proposed that the value of the property should have been fixed at the appraisal amount plus the value of subsequent improvements, less thirty percent. According to Husband's theory, the improvements were worth $100,000 and the fair market value of the property was $1,225,000—approximately $15,000 more than the combined value of the mortgage and the down payment.[3] For her part, Wife opined that the property was worth approximately $880,000 at the time of trial based on the listing prices for comparable properties. According to Wife's theory, at the time of trial market forces had reduced the value of the property by approximately $320,000.

¶ 9 Apart from paying down the mortgage, Husband argues that the community paid to

---

**2.** We find this language immaterial. The deed leaves no doubt that the parties intended the property to have sole and separate character.

**3.** The parties agreed that over $100,000 was spent on improvements to the property. They presented no evidence concerning the increase in market value, if any, resulting from those improvements.

improve the property. *See Lawson v. Ridgeway*, 72 Ariz. 253, 261, 233 P.2d 459, 464–65 (1951) ("[T]he separate estate of a member of the community must reimburse the community for any proper improvements made in good faith upon the separate estate with community funds." (citation omitted)). The court found that "additional community funds were expended to enhance this property, although neither party presented evidence of the amount expended." This finding is clearly erroneous because the record reveals testimony concerning substantial community expenditures on improvements to the property. The evidence did not, however, reveal the extent—if any—to which those improvements enhanced the market value of the property at the time of trial.

■ ¶ 10 In the end, the trial court did not make any finding concerning the property's value at the time of trial. It concluded instead that there was a community lien based solely upon the reduction of principal resulting from the contribution of community funds. While Husband contends that the court undervalued the community lien, Wife contends that no lien could exist as a matter of law because the property did not appreciate in value during the marriage.

■ ¶ 11 The existence and the value of an equitable lien present mixed questions of fact and law. *See, e.g., Barnett v. Jedynak*, 219 Ariz. 550, 555, ¶ 21, 200 P.3d 1047, 1052 (App.2009) (remanding to the family court with instructions to value an equitable lien); *Bell–Kilbourn v. Bell–Kilbourn*, 216 Ariz. 521, 524, ¶ 12, 169 P.3d 111, 114 (App.2007) (same); *Drahos v. Rens*, 149 Ariz. 248, 251, 717 P.2d 927, 930 (App.1985) (same). We will uphold the court's factual findings unless clearly erroneous or unsupported by any credible evidence. *Hrudka v. Hrudka*, 186 Ariz. 84, 91, 919 P.2d 179, 186 (App.1995). Nevertheless, we draw our own legal conclusions from the facts found or implied by the family court. *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6, 49 P.3d 300, 302 (App.2002). We review the court's apportionment of community property for abuse of discretion and consider the evidence in the light most favorable to upholding the judgment. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App.2007).

■ ¶ 12 The 27th Place property was Wife's separate property at the time of trial. *See, e.g., Bell–Kilbourn*, 216 Ariz. at 524, ¶¶ 10–11, 169 P.3d at 114 (a valid disclaimer deed rebuts the presumption that property acquired during marriage is community property). When the community contributes capital to separate property, it acquires an equitable lien against that property. *See Tester v. Tester*, 123 Ariz. 41, 43, 597 P.2d 194, 196 (App.1979) ("The community is entitled to reimbursement when community funds are spent to increase one spouse's equity in separate property."); *see also Drahos*, 149 Ariz. at 249, 717 P.2d at 928; *Honnas v. Honnas*, 133 Ariz. 39, 40, 648 P.2d 1045, 1046 (1982). Wife contends that there should be no equitable lien on the 27th Place property because contrary to recent historical experience, the property decreased in value during the marriage. We disagree.

■ ¶ 13 Generally, a "value-at-dissolution" approach is appropriate to value a community lien. In early Arizona cases, when community funds were used to make mortgage payments on separate property, the community was entitled only to the increased equity resulting from payments that reduced the mortgage principal.[4] *Hanrahan v. Sims*, 20 Ariz.App. 313, 317–18, 512 P.2d 617, 621–22 (1973); *Barnett*, 219 Ariz. at 554, ¶ 15, 200 P.3d at 1051. *Honnas* and *Drahos*, however, held that the community was also entitled to share in the enhanced value of the property even if the increased value was due only to general market conditions. *Honnas*, 133 Ariz. at 40, 648 P.2d at 1046; *Drahos*, 149 Ariz. at 250, 717 P.2d at 929. *See also Bell–Kilbourn*, 216 Ariz. at 524, ¶ 12, 169 P.3d at 114 ("[A]ny community funds expended to pay the mortgage or enhance the value of the house entitled the community to a share of any equity attributable to those efforts.").

---

4. Community payments of interest on separate property do not give rise to any community lien rights. Such payments typically yield ongoing benefits to the community in the form of the right to use the property at its fair rental value and the maintenance of the community investment in its share of the equity. Unlike equity, they are not recoverable in the market.

In *Barnett*, this court recently prescribed a formula for valuing the lien when the property appreciates during the marriage: C + [C/B × A]; where A = appreciation in value of the property during the marriage, B = value on the date of marriage, and C = community contributions to principal.[5] 219 Ariz. at 555, ¶ 21, 200 P.3d at 1052.[6]

■ ¶ 14 These cases assist in valuing the community's interest in appreciated separate property, but they do not address expressly the community's interest in separate property that has depreciated during the marriage and in which the owner-spouse (1) still has a measure of positive equity on the date of trial, or (2) has negative equity on the date of trial. We conclude that the logic of the existing Arizona authorities applies in these situations, and that it is necessary in all cases to determine the value of the property on the date of trial to compute the value of the community lien.[7]

■ ¶ 15 When separate property depreciates but positive equity remains, a straightforward application of the logic of *Barnett* requires the court to recognize a community lien in an amount equal to the reduction in principal indebtedness attributable to the community contribution. We hold that this is the proper approach in such cases.[8] In these situations, the community contributions toward principal have increased equity (effectively enriching the owner-spouse) dollar-for-dollar, and the presence of positive equity means that the owner-spouse can actually realize the benefit conferred by the community. If the community contributions were not recognized in the form of a lien, the owner-spouse would receive a windfall from the community. We therefore reject Wife's position that a decline in market value automatically eliminates the community's interest in sole and separate property.

■ ¶ 16 We likewise see no reason to deprive the community of the entire value of its contributions when separate property depreciates to the point that the owner-spouse has negative equity—to the extent that the owner-spouse has received existing value from the community, the community's contributions must be recognized. It would be illogical, however, to hold that the community should receive the full benefit of its contributions to principal when a portion of the equity it created can no longer be realized. Accordingly, we conclude that when equity is negative, the community lien can be valued as follows: C-[C/B × D]; where D = depreciation in value of the property during the marriage, B = value on the date of marriage, and C = community contributions to principal or market value. This formula is nothing more than a restatement of the principle underlying *Barnett* as applied in a declining market.[9]

¶ 17 Applying these principles to the present case, the family court properly concluded that an equitable lien exists. When Wife purchased the property, she obtained a mortgage of $650,000. It is undisputed that at least $200,000 of community funds were used to reduce the mortgage principal, and that at the time of trial, the outstanding loan balance was approximately $400,000. Regardless whether the market value of the property appreciated or depreciated, community funds served to reduce the principal due on the mortgage. Wife's equity position in the property was enhanced to the extent of the

---

**5.** "Contributions to principal" may consist not only of the reduction of a loan balance, but also those contributions that can be proven to have increased market value and thereby increased equity. Of course, some improvements to property may be the equivalent of contributions to principal, while others may have no material effect on market value.

**6.** In *Barnett*, we addressed prenuptial property appreciation, an issue left open by *Drahos,* and adjusted the value-at-dissolution formula accordingly.

**7.** It merits note that the formulas prescribed in *Barnett* and this decision govern only the valua-

tion of the community's interest. The court's discretion to divide property equitably pursuant to A.R.S. § 25–318 is not restricted by these holdings.

**8.** To the extent that the community lien exceeds the remaining equity, the proportional reduction described below would apply to the excess portion of the lien.

**9.** An underlying assumption of this approach is that equity in the property has not been altered by inequitable conduct by the owner-spouse.

decrease in the loan balance, though her net equity may have decreased because of market forces.

¶ 18 Husband argues that the court erred in valuing the equitable lien at only $200,000. We agree that the court applied the incorrect method, but cannot determine on this record whether it reached an incorrect result. Because the court did not determine the value of the property on the date of trial, it could not determine whether it had appreciated or depreciated. And if the property did depreciate, the court was unable to determine whether there was positive or negative equity. We therefore remand for further proceedings to value the lien in a manner consistent with this opinion.

## II. RENTAL PROPERTIES

¶ 19 Husband argues that the court abused its discretion in valuing the equity in three of the parties' rental properties. Husband contends the court erred because it relied exclusively on Wife's testimony regarding the property values and there was no basis for finding Wife's testimony more reliable than Husband's. We give great deference to the family court's acceptance or rejection of testimony in light of its ability to judge the credibility of witnesses. *Gutierrez*, 193 Ariz. at 347, ¶ 13, 972 P.2d at 680; *Standage v. Standage*, 147 Ariz. 473, 479, 711 P.2d 612, 618 (App.1985). Moreover, we note that the court valued the rental properties in a manner that fell below the values to which Wife testified. We find no clear error in the court's valuation.

## III. MINNESOTA PROPERTY

¶ 20 Wife argues that the court erred by concluding that the Minnesota property was not community property. We review the family court's characterization of property de novo. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15, 5 P.3d 911, 915 (App.2000). We conclude that the property was not community property, but nonetheless was subject to division pursuant to A.R.S. § 25–318.

¶ 21 Husband's parents made a gift of the Minnesota property to Husband and Wife as joint tenants, and reserved a life estate. Husband testified that his parents conveyed the property for estate planning purposes with the understanding that the property would go to Husband's children upon his parents' death. The deed, however, does not mention Husband's children, but merely grants the property to Husband and Wife as joint tenants. The superior court concluded that the Minnesota property was not community property because:

> it was never intended by Husband's parents to be a gift to the community. Instead, the evidence supports Husband's position that this property was to be held for the benefit of Husband's parents/parent to be passed upon their death to their grandchildren.

Wife argues that the deed is not ambiguous, the finding of intent should have been controlled by the language in the deed, and Husband's testimony was inadmissible parol evidence. We agree.

¶ 22 The parol evidence rule prohibits the admission of extrinsic evidence to vary or contradict the terms of a written contract, *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993), and a deed may be treated as a contractual agreement. *Long v. City of Glendale*, 208 Ariz. 319, 328 n. 5, ¶ 27, 93 P.3d 519, 528 n. 5 (App.2004). While Arizona has adopted a permissive approach to the parol evidence rule, "a proponent of parol evidence cannot completely escape the confines of the actual writing." *Long, ·*208 Ariz. at 329, ¶ 32, 93 P.3d at 529. The deed provides: "[Husband's parents] hereby convey(s) and quitclaim(s) to Marvin G. Valento, Jr. and Jill Vaughn Valento, husband and wife, Grantee(s), as joint tenants.... Reserving in grantors and each of them a life estate in said premises." The language is unambiguous in that Husband's parents conveyed the property interest to Husband and Wife jointly, and parol evidence concerning the grantors' intent has no place in the determination of the property's character.

¶ 23 A.R.S. § 25–211(A) provides: "All property acquired by either husband or wife during the marriage is the community property of the husband and wife except for

484

property that is ... 1. [a]cquired by gift, devise or descent." The Minnesota property was acquired during the marriage, but was acquired by gift. Accordingly, absent an affirmative act demonstrating an intent by the spouses to transfer their interests to the community, they hold their interests jointly as separate property interests.

¶ 24 Pursuant to A.R.S. § 25–318(A), the family court in a dissolution proceeding shall "divide the community, joint tenancy and other property held in common equitably." Though the parties' interests in the Minnesota property are not community interests, they are joint tenancy interests subject to division. We therefore remand for further proceedings to permit the trial court to divide the parties' joint interests.

### ATTORNEY'S FEES ON APPEAL

¶ 25 Both parties request attorney's fees on appeal pursuant to A.R.S. § 25–324. In our discretion, we deny their requests and order each party to bear his or her fees on appeal. Because both parties partially prevailed on appeal, we decline to award costs to either party.

### CONCLUSION

¶ 26 For the foregoing reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

CONCURRING: MARGARET H. DOWNIE, Presiding Judge and DONN KESSLER, Judge.