NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

STEVEN J. MONTGOMERY, *Petitioner/Appellant*,

*v.*

MELISSA LYNN DIVINE, *Respondent/Appellee*.

No. 1 CA-CV 16-0187 FC
FILED 4-13-2017

Appeal from the Superior Court in Maricopa County
No. FN2014-003832
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Wees Law Firm LLC, Phoenix
By James F. Wees
*Counsel for Petitioner/Appellant*

Sloma Law Group, Phoenix
By Melinda M. Sloma
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge Michael J. Brown and Judge Patricia Starr[1] joined.

---

**T H U M M A**, Judge:

¶1        Steven J. Montgomery (Husband) appeals from a divorce decree awarding an equitable lien to Melissa L. Divine (Wife) on Husband's separate real property. Because Husband has shown no error, the award is affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2        After marrying in 2006, in September 2014, Wife accepted service of Husband's petition for dissolution. Wife sought a community lien on the marital residence (which Husband acquired before marriage), asserting community funds had been used to pay two loans on the property. Wife asserted the house had appreciated in value during the marriage and sought an equitable lien for $44,922.23. Husband asserted the house had not appreciated in value during the marriage and there had been "no increase in the equity in the home for a meaningful assertion of a community lien."

¶3        At trial, Husband testified that the community paid toward loans on the property but the value of the house had decreased during the marriage. Husband submitted a Zillow printout showing the value of the house in 2014 to be $363,813. Husband did not take issue with an appraisal valuing the house at $350,000 in September 2014, the month he served the petition for dissolution on Wife.

---

[1] The Honorable Patricia Starr, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] On appeal, this court views the evidence in the light most favorable to upholding the decree entered after a bench trial. *See Valento v. Valento*, 225 Ariz. 477, 481 ¶ 11 (App. 2010).

¶4            Husband testified that, in 2005, he obtained a loan on the property for approximately $265,000 to $270,000 to buy out his mother's half interest in the house at a time when the fair market value was between $425,000 and $525,000. Husband confirmed a May 2005 disclosure showing the loan was for $270,000, of which $267,782.40 was financed. Husband also acknowledged a bank statement showing the balance owed in July 2014 was $235,025.27.

¶5            Husband testified that he obtained a home equity loan on the property for either $65,000 or $55,000 "when [the parties] were getting married." Wife testified that Husband obtained the home equity loan before marriage. Husband further testified that the home equity loan had an outstanding balance of $35,914.77 in mid-August 2014.

¶6            In the decree, the superior court found the house was Husband's sole and separate property and that, because mortgage payments were made on the property during the marriage, the property was subject to an equitable lien. The court found that (1) the house had depreciated in value during the marriage, (2) Husband had positive equity and (3) "community contributions to the mortgage have increased Husband's equity in the property by paying down the principal."

¶7            The court then found that "the first mortgage of $267,000.00 was reduced to $235,025.27 during the marriage, resulting in a community contribution of $31,974.73." The court found the home equity loan "was originally an obligation of $60,000 (the average between the $55,000.00 to $65,000.00 that Husband stated was the original [home equity loan] balance). The [home equity loan] was reduced to $35,914.77 during the marriage, resulting in a community contribution of $24,085.23." Accordingly, the court found that the total community contribution to the reduction in principal on the loans was $56,059.96 and that Wife was entitled to half that amount, or $28,029.98, as her half interest in the community lien.

¶8            This court has jurisdiction over Husband's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2017).[3]

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

¶9            Entitlement to, and value of, an equitable lien on separate real property are mixed questions of law and fact subject to a de novo review. *See Valento v. Valento*, 225 Ariz. 477, 481 ¶ 11 (App. 2010). Factual findings by the superior court will be affirmed unless clearly erroneous. *Id.* When community funds are used to pay the mortgage on separate property, the community is entitled to an equitable lien due to the expenditure of community funds. *Id.* at 481 ¶ 12; *Barnett v. Jedynak*, 219 Ariz. 550, 553–54 ¶ 14 (App. 2009). Calculating the equitable lien depends on whether the value of the property appreciated or depreciated during the marriage. *Drahos v. Rens*, 149 Ariz. 248, 250 (App. 1985) (appreciation); *Barnett*, 219 Ariz. at 555 ¶ 21 (appreciation); *Valento*, 225 Ariz. at 482 ¶¶ 15–16 (depreciation).

¶10            Husband argues the evidence did not show whether the property had appreciated or depreciated in value during the marriage, meaning no community lien could be calculated. However, Husband advised the court in the joint pretrial statement that the house had not appreciated during the marriage. And Husband testified that the house depreciated in value during the marriage. Husband's testimony that the fair market value of the house in 2005 (shortly before the marriage) was between $425,000 to $525,000 and his testimony acknowledging an appraisal valuing the property in September 2014 (the month he served the petition for dissolution) to be $350,000 provides a reasonable basis for the court's finding that the house depreciated in value during the marriage.

¶11            Husband argues the court erred in awarding an equitable lien in the absence of specific information required to calculate the lien, including the purchase price of the house, its value as of the time of marriage, the amount of the loan reduction during marriage and the value of the house at the time of the service of the petition. The variables Husband identifies, however, are for an appreciation scenario. *Drahos*, 149 Ariz. at 250; *Barnett*, 219 Ariz. at 555 ¶ 21. In a depreciation scenario, when there is positive equity, the court "recognize[s] a community lien in an amount equal to the reduction in principal indebtedness attributable to the community contribution." *Valento*, 225 Ariz. at 482 ¶ 15. That is what the court did here.

¶12            Nor has Husband shown the superior court erred in finding positive equity remained. The court seems to have accepted Husband's Zillow printout showing the value of the house in 2014 to be $363,813. Husband testified that he had no issue with an appraisal showing the value of the property in September 2014 to be $350,000. The court found Husband

owed $235,025.27 on the first loan and $35,914.77 on the second loan near the time of service of the petition. The record supports these factual findings. Based on those findings and comparing the value of the house at the time of service as testified to by Husband with the amount of loan debt at about that same time, the court did not err in finding positive equity remained at the time of dissolution.

¶13        Next, Husband challenges the calculation of the reduction of principal indebtedness, contending the superior court had no evidence of the amount of reduction and erred in making its own computation. The court found that the first loan was reduced from $267,000 (a proxy for the actual loan amount of $267,782.40) to $235,025.27 during the marriage and the home equity loan was reduced from "$60,000 (the average between the $55,000.00 to $65,000.00 that Husband stated was the original [home equity loan] balance) . . . to $35,914.77." These findings are not clearly erroneous. Husband does not challenge the $267,000 amount.[4] Husband also acknowledged a July 2014 bank statement, near the time of dissolution, showing the balance owed on that loan to be $235,025.27. The court appropriately exercised its discretion in averaging the range of figures provided by Husband as to the initial balance of the home equity loan shortly before the marriage and Husband testified that the home equity loan had an outstanding balance of $35,914.77 shortly before service of the petition for dissolution. Based on these findings, the court correctly calculated the amount of the principal reduction of each loan to determine the community lien. Even if Wife did not compute the actual amount of the reduction of principal indebtedness, the record supports the court's calculation, and Husband has shown no error.

¶14        Finally, Husband argues the court could not impose an equitable lien against real property flowing from the reduction of non-real estate related debt. The test, however, focuses on reduction in indebtedness, not the nature of the debt. *See Valento*, 225 Ariz. at 482 ¶ 15. Because community funds were used to pay the indebtedness on the real property, the court appropriately imposed an equitable lien.

---

[4] Husband's only challenge to the use of the $267,000 amount is that the court lacked the original loan balance pre-dating his 2005 refinance to buy out his mother's half interest. However, the relevant number in the calculation is not the original loan balance.

**CONCLUSION**

¶15 Because Husband has shown no error, the equitable lien is affirmed. Each side is to bear their own attorneys' fees. Wife is awarded taxable costs contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA