NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DEREK TERRENCE MORRIS, *Petitioner/Appellant*,

v.

JODIE LYNN MORRIS, *Respondent/Appellee*.

No. 1 CA-CV 19-0028 FC
FILED 12-5-2019

Appeal from the Superior Court in Maricopa County
No. FC2016-006248
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Cavanagh Law Firm, Phoenix
By Christina S. Hamilton
*Counsel for Petitioner/Appellant*

Hallier & Lawrence, PLC, Phoenix
By Angela K. Hallier
*Co-Counsel for Respondent/Appellee*

Jones Skelton & Hochuli, PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge John C. Gemmill[1] joined.

---

**W E I N Z W E I G**, Judge:

¶1        Derrick T. Morris ("Husband") appeals the superior court's decree of marital dissolution and denial of his motion for a new trial, arguing the court erroneously classified his separate property as community property. Husband further contests the court's denial of his motion in limine to preclude expert testimony about the commingling of community and separate assets. We find no reversible error and thus affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Husband and Jodie L. Morris ("Wife") married in Canada in August 2002 and spent several years of their marriage in Arizona. They have three children. Husband petitioned to dissolve the marriage in June 2016.

¶3        The parties agreed on most issues, but the court held a bench trial to resolve their competing claims to real property in Canada, including 100 acres of agricultural land (the "BDM Land") and a commercial building (the "Financial Building"). Husband and Wife testified. The court also heard testimony from Husband's longtime bookkeeper, Joan Thomas, and Wife's expert accounting witness, Lynton Kotzin.

¶4        The court resolved all contested issues in a September 2018 dissolution decree. Most relevant here, the court found that the community held an equitable lien of $1,636,626 on the Financial Building. The court also determined that the community owned 93.2 percent of the BDM Land, and Husband owned the remaining 6.8 percent as sole and separate property. Husband timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

---

[1]        The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

## DISCUSSION

**¶5**     Husband contends the superior court erred in finding that the community (1) held a $1,636,626 equitable lien on the Financial Building, and (2) owned 93.2 percent of the BDM Land.  Husband further argues the court should have excluded the expert testimony of Lynton Kotzin.

## A.     The Financial Building

**¶6**     The Financial Building is Husband's sole and separate property.  He purchased the Building before the marriage in 2002 for $1,470,000, including a $725,000 mortgage.  Husband's bookkeeper also opened a bank account—the Morris Management account—for the Building's rental income and expenses.

**¶7**     The superior court found that the Morris Management account became commingled during marriage and that Husband pulled $240,584 from the commingled funds to pay the Financial Building's mortgage. The court thus ordered that the community held an equitable lien of $1,636,626 on the Financial Building "of which Wife is entitled to half."

**¶8**     On appeal, Husband challenges both the superior court's finding that the Morris Management account was commingled and the amount of the community's equitable lien.

### 1.     Commingled Assets

**¶9**     We review *de novo* whether property is separate or community property. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000).  The community may acquire an equitable lien against one spouse's sole and separate real property when community assets are used to pay down a mortgage on that separate property. *Drahos v. Rens*, 149 Ariz. 248, 249-50 (App. 1985).  And we presume that mortgage payments from commingled funds are made with community assets unless presented with "clear and satisfactory evidence" that the payments came from separate funds alone. *Brebaugh v. Deane*, 211 Ariz. 95, 97-98, ¶ 6 (App. 2005); see A.R.S. § 25–211(A).

**¶10**     The record amply supports that the Morris Management account was commingled, and Husband did not rebut the presumption of community assets.  The evidence reflects that community assets were transferred into the Morris Management account, the couple processed personal transactions through the Morris Management account, the Morris

Management account was used for financial transactions related to other community-owned real property, and the couple transferred assets from the Morris Management account to different community checking accounts.

**¶11**      Husband concedes that community assets were deposited into the Morris Management account, but insists that his bookkeeper treated those deposits as community "loans" owed to the community, thus ensuring the integrity of the community and separate funds in the account.

**¶12**      We are not persuaded for three reasons. First, the deposits of community assets were not designated as "loans" until after this lawsuit was filed. Before then, Morris Management's financial statements identified the deposits as "equity." Second, the record contains no loan documents or repayment schedules. And third, the record includes no evidence that the community accrued interest on the purported loans. Against this backdrop, Kotzin "explain[ed] that these transactions were not separated and the outflows were distributions, not loans repaid," which the superior court found "persuasive." Husband offered no expert testimony to the contrary.

### 2.    Lien Amount

**¶13**      Husband also argues that the superior court "inaccurately calculated" the equitable lien. The existence and value of an equitable lien present a mixed question of fact and law, but we uphold the superior court's factual findings unless clearly erroneous or unsupported by any credible evidence. *Valento v. Valento*, 225 Ariz. 477, 481 (App. 2010).

**¶14**      We find no error. The superior court used the "value-at-dissolution" approach, which is generally appropriate to value a community lien. *Id.* "The community property equitable lien interest is determined by adding the principal balance paid by the community to the product of the community property principal payments divided by the purchase price times the appreciation in value." *Drahos*, 149 Ariz. at 250. The court recognized that the Financial Building had appreciated by $8,530,000 during the marriage, which meant the community's $240,584 contribution generated a $1,636,626 community lien on the building.

**¶15**      We affirm the superior court's decision on commingling and the value of the equitable lien.

**B.     The BDM Land**

¶16        The BDM Land was acquired during the marriage in September 2005 for $901,252.  The purchase price was raised from three sources, including $61,544 in Husband's separate funds, $204,708 in community funds, and a $635,000 mortgage.  A month later, in October 2005, Husband borrowed money on a line of credit to fully repay the $635,000 mortgage.  But that transaction only shuffled lenders.  The debt remained intact and outstanding until January 2007.  At that time, Husband paid $595,381 from the Morris Management account toward the line of credit.  The Morris Management account had been funded only three weeks earlier with $761,035 in community assets.

¶17        After a bench trial, the court found that the community owned 93.2 percent of the BDM Land because it supplied $839,708 of the $901,252 purchase price—which reflected the community's original $204,708 contribution plus the full $635,000 mortgage.

¶18        Husband contests the superior court's finding that the community owned 93.2 percent of the BDM Land while Husband separately owned only 6.8 percent—instead claiming that he owned 78 percent.  We review *de novo* the superior court's classification of community and separate property, *Pownall*, 197 Ariz. at 581, ¶ 15, but uphold its factual findings unless they are clearly erroneous, *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012).

¶19        We find no error.  The BDM Land is presumed to be community property because it was acquired during the marriage and Husband never rebutted the presumption of community property with clear and convincing evidence.  *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015).  The record reflects the community provided $204,708 of the initial purchase price in September 2005, and later funded the Morris Management account right before it was used in January 2007 to reduce the line of credit.

¶20        Husband's arguments miss the mark.  He first claims the October 2005 shuffle of lenders, which satisfied the initial debt, rebutted the community presumption. As the court recognized, however, that transaction was "really a fiction" because "Husband merely moved one loan to another and did not pay that loan until the community made the payment."  The "important" point was "that the only significant payment on the ultimate loan associated with the BDM [L]and was not made until the community paid the $761,0[35] into the Morris Management account."

**¶21**      Husband then argues he only borrowed the $761,035 deposit from the community, which might have created a reimbursement claim, but not an "increased" ownership interest. But here again, Husband failed to provide the evidence needed to rebut the presumption of community property. We affirm the superior court's apportionment of the ownership interests in the BDM Land.[2]

## C.    Motion in Limine

**¶22**      Husband claims the superior court erroneously denied his motion to exclude Kotzin's testimony on grounds that Kotzin offered "legal conclusions." We review for an abuse of discretion. *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 297, ¶ 15 (App. 2014).

**¶23**      Kotzin did not offer a legal opinion. He examined 16 years of financial transactions and offered his opinion on various financial and accounting issues, including whether the financial evidence reflected a series of loans from the community to the Morris Management account. Kotzin has significant experience in forensic accounting and the court valued his assistance in navigating a "complicated and detailed" set of facts. Ariz. R. Evid. 703 (expert testimony should be helpful to the factfinder). Nor did Husband challenge Kotzin's methods. We find no abuse of discretion.

## CONCLUSION

**¶24**      We affirm the decree of dissolution. In our discretion, we deny Wife's request for an award of attorney's fees under A.R.S. § 25-324.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2]     Husband contends *Rueschenberg v. Rueschenberg*, 219 Ariz. 249 (App. 2008) controls this issue, but that case dealt with apportioning the earnings and increased value of a spouse's separate medical hardware business.