NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KENNETH BURL FEATHERSTON, *Petitioner/Appellant*,

*v.*

TERRI L. FEATHERSTON, *Respondent/Appellee*.

No. 1 CA-CV 25-0519 FC

FILED 02-23-2026

Appeal from the Superior Court in Maricopa County
Nos.  FN2023-003853
FN2023-092802
The Honorable Lauren R. Guyton, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Colburn Hintze Maletta, PLLC, Phoenix
By Henry Alzate
*Counsel for Petitioner/Appellant*

Rowley Law Group, PLLC, Mesa
By Scott R. Rowley
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

---

**P A T O N**, Judge:

¶1        Kenneth Featherston ("Husband") appeals the superior court's decree dissolving his marriage to Terri Featherston ("Wife").  For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2        Husband and Wife married in 1995.  Husband petitioned for dissolution in September 2023, and Wife filed for dissolution a few days later.  The superior court consolidated the cases.

¶3        The superior court held a temporary orders hearing in November 2023.  It awarded Wife temporary spousal maintenance, reasoning that Wife "experienced significant medical issues that prevent[ed] her from working."  And it ordered Husband to pay the mortgage on the parties' marital residence.  It also ordered Husband to pay the mortgage on the parties' home equity line of credit ("HELOC") "subject to a Bobrow claim" for reimbursement of post-petition mortgage payments.  It ordered Wife to pay the remaining marital home expenses, including utilities, phone, and internet.

¶4        The following year, Husband moved to modify the temporary orders, claiming he could not afford the temporary spousal maintenance, mortgage, and HELOC payments.  The court denied his motion, finding "Wife's situation ha[d] not changed since the entry of the temporary orders" and "Wife [was] still unable to work full time and ha[d] undergone multiple surgeries."

¶5        In May 2025, the court held a dissolution trial, at which the parties' mortgage and HELOC payments, Husband's sports memorabilia collection, the parties' retirement accounts, and Wife's limited ability to work due to her health were disputed.  Husband wanted Wife to reimburse him for one-half of the post-petition mortgage payments he made.  He also testified he could not afford the monthly payments on the HELOC, had not

made payments on it for 15 months, and that the HELOC company would not extend more forbearances on the HELOC. He testified that the marital home needed to be sold.

¶6        Husband further testified that he collected a substantial amount of sports memorabilia during the marriage, but also said he "[doesn't] really have a whole lot of sports memorabilia" and that if he had any, it would be in his storage unit. He later said he had "a couple pictures" in his collection but did not provide any estimated value of worth. Husband conceded on cross-examination that he did not answer any of Wife's attorney's requests for information on it. Wife testified Husband had been collecting the sports memorabilia since the 1990s, he concealed it from her, her son told her he helped Husband move the items to a storage unit Husband controlled, and she believed its value exceeded $50,000.

¶7        Husband testified he wanted to split the parties' retirement accounts equally. Wife testified about a Transamerica individual retirement account ("IRA") that Husband "took out of [her] 401(k)."

¶8        Wife testified about her medical issues. She said she was diagnosed with diverticulitis in October 2022 and had undergone seven surgeries in a little over two years for various other medical conditions — including being able to function without the use of a colostomy bag and having 18 inches of her intestine removed. Wife stated her medical appointments impacted her ability to work on a weekly basis and she had doctors' notes verifying her restricted ability to work. She admitted that she did not request leave under the Family and Medical Leave Act ("FMLA") in 2025.

¶9        Wife estimated her medical debt was "upwards of [$] 35,000" and requested spousal maintenance partly to cover her medical needs. She also testified she could earn $1,000 per month working part-time as a property manager, and that she could earn more when she was able to work full-time.

¶10        The superior court awarded Wife $1,036.56 per month for 96 months but then added Husband must pay it "in a lump sum in the amount of $99,509.76 . . . out of the proceeds of the marital home." It reasoned "a lump sum payment out of the equity of the home would be the best way to provide for Wife's needs and [consider] Husband's monthly needs."

¶11        The court further found that Husband failed to disclose any information about the value and specific contents of his sports memorabilia collection, while also finding Wife failed to give credible evidence

supporting her claim that it was worth $50,000. It concluded that "[d]ue to Husband's failure to comply with discovery and disclosure as to his sports memorabilia," it was awarding Wife all five of the parties' bank accounts, which totaled $1,673.44.[1]

**¶12** The court also awarded each party one-half of the community portion of their retirement accounts. It further found the HELOC was used to pay Husband's debts only, he failed to make payments on it during the pendency of the dissolution and therefore, ordered Husband to pay 100% of the HELOC debt.

**¶13** Husband timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

## DISCUSSION

**¶14** Husband argues the superior court erred in (1) finding Wife eligible for spousal maintenance under Section 25-319(A), (2) applying the Section 25-319(B) factors in its spousal maintenance award, (3) requiring him to pay spousal maintenance as a lump sum, (4) failing to rule on his *Bobrow* claim, (5) awarding Wife all the parties' bank accounts as a sanction for Husband failing to disclose his sports memorabilia information, (6) ordering Husband to pay the entirety of the HELOC debt, and (7) allegedly awarding Wife 100% of an IRA.

### I.    Spousal Maintenance

**¶15** We review the record to determine whether evidence supports the court's determination that a spouse qualifies for maintenance under Section 25-319(A). *Boyle v. Boyle*, 231 Ariz. 63, 66, ¶ 11 (App. 2012). "We will uphold the court's factual findings unless clearly erroneous or unsupported by any credible evidence." *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010).

---

[1] Husband's Bank of America x9732 valued at $10.72, Husband's Bank of America x7155 valued at $75.00, Husband's FedEx Credit Association x004 valued at $40.32, Wife's Desert Financial x1738 valued at $913.04, and Wife's Desert Financial x5018 valued at $634.36.

### A. The superior court did not err in finding Wife eligible for spousal maintenance under Section 25-319(A).

¶16    The superior court may award spousal maintenance when it finds any one of the statutory grounds in Section 25-319(A) apply. *See Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 11 (App. 2007).

¶17    Here, the court determined Wife eligible for maintenance under Section 25-319(A)(1), (2), and (5). Husband argues the court's determinations on these three grounds were erroneous.

¶18    Substantial evidence supports all three findings. First, the record supports the court's finding that Wife lacked sufficient property to provide for her needs. Although the court awarded her a portion of Husband's pensions and 401(k), it found the parties' home faced foreclosure, and both parties testified that Wife resided in that home for twenty-four years. *See In re Marriage of Cotter and Podhorez*, 245 Ariz. 82, 87, ¶ 12 (App. 2018) (stating the court is not required to make specific findings about the value of property in its Section 25-319(A)(1) analysis). The court valued the parties' retirement accounts at $365,662.04 and awarded each party one-half of the community retirement accounts.[2] Wife, however, is not "require[d] . . . to exhaust a retirement account to support [herself]." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 18 (App. 1998). And Wife testified she would not be able to afford rent, utilities, food, clothing, and basic auto expenses without spousal maintenance.

¶19    Second, the record supports the court's finding that Wife lacked the earning ability to be self-sufficient. The court found that although Wife had a property management career, her health conditions and surgeries reduced her ability to work full-time since 2022. Wife testified that she had seven surgeries over two years, including one surgery less than one month before trial, and her medical appointments and issues impacted her ability to work. She also testified to her ability to earn roughly $1,000 per month but that she anticipated needing to spend between $2,000 and $2,500 per month in rent alone if they sold their home.

¶20    Finally, the record supports the court's finding that the marriage was of a long enough duration and Wife was of an age that may

---

[2] Fed Ex Pension: $92,755.03, Vanguard 401(k): $252,879.03, Transamerica IRA: $15,074.25, Wife's IRA: $4,953.73. The figure does not include Husband's military retirement, as he only provided a monthly estimated payment of $500. But he also testified and agreed that Wife's portion of that was "not going to be a whole lot of money."

preclude the possibility of gaining employment adequate to be self-sufficient. The parties were married for twenty-eight years. The record shows that 58-year-old wife was experiencing severe health issues that limited her ability to maintain adequate employment.

¶21        Because substantial evidence in the record supports the court's spousal maintenance eligibility findings, and the court only needed to find one ground proven, *see Elliott v. Elliott*, 165 Ariz. 128, 136 (App. 1990), we discern no error.

> **B.      The superior court did not err in determining the amount and duration of spousal maintenance under Section 25-319(B).**

¶22        If the court determines a spouse is entitled to an award of spousal maintenance under Section 25-319(A), it must then consider the thirteen factors in Section 25-319(B) to determine the amount and duration of the award. *Helland v. Helland*, 236 Ariz. 197, 203, ¶ 28 (App. 2014). Here, the court made findings on all thirteen factors and awarded Wife $1,036.56 per month for 96 months, to be paid in a lump sum. Husband challenges its findings on seven factors—subsections (B)(1), (3), (4), (5), (9), (11), and (12).

¶23        It is clear from the decree that the court considered all evidence relevant to the parties' reasonable financial needs, methodically addressing the evidentiary support for each of the thirteen factors in Section 25-319(B)—including the seven factors Husband challenges. When considering subsection (B)(1), the court found the parties' standard of living changed due to Wife's illness. The record supports this finding.

¶24        Under subsection (B)(3), the court found Wife was fifty-eight years old, and although she had "knowledge and experience in her field," her "physical condition reduced her earning ability." This finding is supported by substantial evidence of Wife's seven surgeries in a little over two years and her testimony regarding her limited ability to work.

¶25        In its finding under subsection (B)(4), the court awarded Wife $1,035.56 per month in spousal maintenance, which was less than the $2,122.37 per month she requested, after finding Husband did not have the ability to meet his needs. The record demonstrates the court considered Husband's ability to meet his needs, and it supports the court's decision to award Wife less than the amount she requested.

¶26         As to subsection (B)(5), the court found Husband had more resources due to Wife's medical issues.  Meanwhile, Wife testified she did not request FMLA leave in 2025, but she also stated she could not pay for rent, utilities, food, some money for clothing, and basic car expenses without spousal maintenance.  Husband testified he could not afford his own place to live.  Although the parties provided conflicting testimony regarding their comparative financial resources and earning abilities, we defer to the superior court's credibility determinations, and substantial evidence supports its findings on this subsection.  *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶27         In analyzing subsection (B)(9), the court found Wife worked reduced hours due to her health issues and her medical bills further reduced her financial resources.  Substantial evidence in the record supports this finding.  Indeed, Wife estimated she owed "upwards of [$] 35,000" in medical expenses.

¶28         Under subsection (B)(11), the court determined that "there was no credible evidence as to the amount of the sports memorabilia presented for this factor," despite Wife's testimony that she believed the value of the memorabilia to be approximately $50,000.  Husband challenges the court's finding by arguing this factor should have been neutral and "not a basis to award Wife all bank balances or to inflate spousal maintenance."  But nothing in the record suggests the court used this factor to "inflate spousal maintenance" nor is there evidence to demonstrate the court did not weigh this factor neutrally.  Further, Husband testified he declined to answer Wife's counsel's requests for information about his sports memorabilia.

¶29         Finally, the court found Wife paid $320 per month in medical insurance under subsection (B)(12).  Wife testified that her insurance did not cover most of her medical expenses and surgeries and that she actually paid $160 twice a month in health insurance which equaled $320 per month.  Wife's 2024 Affidavit of Financial Information and her pre-trial statement, however, list only $160 per month in her health insurance payments.  The superior court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (internal quotations and citations omitted).  The superior court is in the better position to determine whether the parties can meet their needs independently.  There is substantial evidence to support its decision as to the challenged subsections in Section 25-319(B) on the record presented.  Thus, Husband has shown no error.

### C. The superior court erred in awarding Wife a lump-sum spousal maintenance payment.

¶30 Husband argues the court violated Section 25-327(A) by converting the award into a lump sum and "caus[ing] the entire obligation to vest at once." He further contends the court may only award nonmodifiable spousal maintenance if agreed upon by the parties. Wife responds that the lump sum award "[did] not erase modifiability" because the court "identifie[d] the award as explicitly modifiable."

¶31 "[S]pousal maintenance awards are presumptively modifiable. . . ." *Huey v. Huey*, 253 Ariz. 560, 562, ¶ 11 (App. 2022); *see* A.R.S. § 25-319(D) (stating that maintenance terms may be non-modifiable *if* parties agree) (emphasis added). For a lump sum payment to be considered non-modifiable, the decree must expressly delineate the award as non-modifiable. *Schroeder v. Schroeder*, 161 Ariz. 316, 323 (1989).

¶32 Here, the parties did not have an agreement providing that spousal maintenance would be non-modifiable. Indeed, Husband stated there was no "mutual agreement by the parties" to a non-modifiable spousal maintenance award, which Wife did not contest. Nevertheless, the superior court awarded Wife a non-modifiable lump sum, despite explicitly stating the "award shall be modifiable as to amount and duration in accordance with A.R.S. § 25-327."

¶33 And the superior court's decree conflicts as to the award. It first requires Husband to pay Wife a monthly spousal maintenance amount for 96 months effective May 19, 2025. But it then orders that spousal maintenance "shall be paid in a lump sum in the amount of $99,509.76 to [Wife] out of the proceeds of the marital home."

¶34 We therefore vacate the portion of the decree requiring Husband to pay Wife spousal maintenance in a lump sum of $99,509.76 out of the marital home proceeds, meaning the decree language ordering Husband to pay Wife $1,036.56 per month for 96 months starting May 19, 2025, remains in effect.

## II. Property Division

¶35 We review the court's division of community property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We view the evidence in the light most favorable to upholding the superior court's ruling and will uphold it if the evidence reasonably supports it. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

### A. The superior court erred by failing to rule on Husband's *Bobrow* claim.

¶36 Husband contends the superior court incorrectly denied his *Bobrow* reimbursement claim for one-half of post-petition first mortgage payments he made, despite ordering him to make the payments subject to a *Bobrow* claim in its November 2023 temporary orders ruling.

¶37 The superior court has broad discretion to determine equitable division of community property. *Hoobler v. Hoobler*, 254 Ariz. 130, 137, ¶ 13 (App. 2022). When one party uses his separate property to pay community debt after the dissolution petition is filed, the court must account for the post-petition payments "in an equitable property distribution." *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶¶ 18-19 (App. 2017). We assess the overall property allocation to determine if the denial of Husband's reimbursement claim for post-petition mortgage payments is equitable. *Barron v. Barron*, 246 Ariz. 580, 591, ¶¶ 43-44 (App. 2018), *vacated in part on other grounds*.

¶38 Here, the superior court found the case did not present "a unique set of facts or circumstances," and "[t]herefore, an equal division of community property is appropriate to achieve equity." But it did not address Husband's request for reimbursement of post-petition mortgage payments, which he made at trial and in his pre-trial statement.

¶39 Husband testified that he paid $1,578.64 per month on the mortgage from September 2023 through the date of trial and produced supporting documentation. He asked the court to order Wife to reimburse him one-half of the total amount he paid—approximately $19,000. Wife, however, testified it would be fair for her not to reimburse Husband one-half the post-petition payments he made on the mortgage.

¶40 The court did not address this request as to the first mortgage although it ordered Husband to pay the $50,000 debt remaining on the HELOC. The court made no express findings or rulings as to Husband's *Bobrow* claim, which it was not required to do; however, nothing in the record supports the court's implicit denial of it. Husband provided mortgage statements from October 2022 through March 2025, which show that payments were made. This evidence is relevant to a *Bobrow* claim analysis. We therefore remand for the superior court to address this issue.

**B.     The superior court erred in awarding Wife all of the parties' bank accounts.**

**¶41**          Husband argues the court violated its authority pursuant to Section 25-318(A) when it found he failed to disclose evidence of his sports memorabilia and therefore awarded Wife all of their bank account balances. He specifically contends this was error because the court awarded Wife the parties' bank accounts despite finding "no credible evidence" of the value of Husband's sports memorabilia when it analyzed the Section 25-319(B)(12) factor regarding concealment, etc. of property held in common.

**¶42**          Section 25-318(A) requires the superior court to divide community property equitably. *See* A.R.S. § 25-318(A). The court has broad discretion to determine equitable division of community property. *Hoobler*, 254 Ariz. at 137, ¶ 13.

**¶43**          But it is unclear whether the superior court equitably divided the parties' property because it found both that "Husband failed to disclose" the value of his sports memorabilia and that "Wife argued . . . but failed to give credible evidence as to how" she valued the sports memorabilia at $50,000. Further, instead of determining how to equitably divide the financial accounts, the court awarded Wife all the balances in the accounts, totaling $1,673.44 because "Husband[] fail[ed] to comply with discovery and disclosure as to his sports memorabilia." Indeed, the court noted "there is no way for [it] to ensure that the division would be monetarily equal." Because no reasonable evidence supports the court's division of property, we vacate and remand for the court to independently determine: (1) how to divide the parties' bank accounts and (2) how to divide, if at all, the sports memorabilia collection.

**C.     The superior court did not err in ordering Husband to pay Wife's one-half portion of the HELOC.**

**¶44**          Husband contends he should not be responsible for 100% of the debt incurred through the HELOC.

**¶45**          Section 25-318 requires the superior court to divide property and debt equitably, not with arithmetic precision. *See Toth v. Toth*, 190 Ariz. 218, 221-222 (1997). Here, the superior court found the "HELOC [] was used to pay debts in Husband's name only, which included credit cards and the car he was awarded . . . [and] [he] did not use any of the funds on the marital property." It also found that Husband failed to make payments on the HELOC despite being ordered to do so, which resulted in the parties receiving a foreclosure notice.

¶46        The record supports the court's finding that the debt incurred by the HELOC disproportionately benefited Husband.  For example, Wife testified that when the parties took out the HELOC, Husband told her they would save money by using the HELOC to pay off his vehicle and credit card debt.  Husband did not present evidence to contravene Wife's testimony.  Because "distribution of marital property is left to the sound discretion of the trial court," we find no error.  *Baum v. Baum*, 120 Ariz. 140, 142 (App. 1978).

### D.        The superior court did not award Wife 100% of a community IRA.

¶47        Husband argues the court erroneously awarded Wife 100% of a community retirement account.  Husband is mistaken.  The decree merely stated that Wife testified she believed Husband withdrew money from the account without her consent and the court found Wife's testimony credible.  It then states, "[t]he amount in the account $4,953.73 [sic]."  It does not award Wife 100% of the community IRA, as Husband contends; instead, it ordered "each party ½ of the community portion of the retirement plans identified as either a community asset or containing assets that belong to the community."  Husband has shown no error.

## III.    Husband's Additional Arguments

¶48        Husband lists other issues in his opening brief but does not develop argument or cite supporting authority as to those issues.  An appellant waives his claim by failing to provide significant arguments and supporting authority.  *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009).  Because Husband failed to develop any legal argument on these issues in compliance with Arizona Rule of Civil Appellate Procedure 13(a)(7), we decline to address them.

## IV.    Attorneys' Fees

¶49        Husband requests attorneys' fees and Wife requests both attorneys' fees and costs.  After considering the parties' financial resources and the reasonableness of their positions, we decline to award attorneys' fees to either party.  We also decline to award costs because both parties prevailed in part.  *See Valento*, 225 Ariz. at 484, ¶ 25 (declining to award costs to either party because both parties prevailed in part).

**CONCLUSION**

**¶50** We affirm in part, vacate in part, and remand for further proceedings consistent with this decision.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR