NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

CHRISTINE LEAH MENGHINI, *Petitioner/Appellee/Cross-Appellant*,

*v.*

PETER ANTHONY MENGHINI, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 19-0057 FC
FILED 3-3-2020

Appeal from the Superior Court in Maricopa County
No. FC2016-091275
The Honorable Laura M. Reckart, Judge

**VACATED IN PART AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Stewart Law Group, Phoenix
By Brian G. Winter
*Counsel for Petitioner/Appellee/Cross-Appellant*

The Wilkins Law Firm, PLLC, Phoenix
By Amy M. Wilkins, Laura C. Brosh (argued),  and Adam P. Boyd
*Counsel for Respondent/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**         Peter Menghini ("Husband") appeals and Christine Menghini ("Wife") cross-appeals from the property division and other orders entered in the decree dissolving their marriage. Between them, the parties raise eight claims of error in the court's decree. For the following reasons, we affirm some of the orders within the decree, vacate others, and remand for proceedings consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**         Husband and Wife married in May 2004, in Colorado. Both Husband and Wife came to the marriage with substantial real estate assets, and they acquired several properties during the marriage. In addition, during the marriage, Wife's family, who is also involved in real estate, gifted the couple membership interests in various family-owned limited liability companies (the "Family LLCs") engaged in real estate.

**¶3**         In December 2018, following a dissolution trial in which Wife, Husband, and their respective experts testified concerning the character of and potential community interest in the parties' assets, the superior court issued a decree dissolving the marriage and allocating the parties' community and separate property and debts. The parties appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and Arizona Rule of Family Law Procedure 78(c) (2019).

---

[1]     We view the facts in the light most favorable to sustaining the superior court's findings and orders. *Alvarado v. Thomson*, 240 Ariz. 12, 13, ¶ 1, n.1 (App. 2016).

## DISCUSSION

¶4 Husband argues the superior court erred by: (1) inequitably dividing a piece of community property known as the "Waltann Property"; (2) miscalculating the community lien that should be attributed to two pieces of Wife's separate property—a parcel of land located in Buckeye known as the "Martha Jane Property" and a home in Colorado known as the "Rudi Lane Property"; (3) finding that Wife's membership interest in Corner MCR, LLC ("Corner MCR") and, by extension, a solar lease, was Wife's separate property and finding Husband was not entitled to an equitable lien for community labor related to Corner MCR or the solar lease; (4) ordering Husband to reimburse Wife's parents for an alleged debt incurred after the service of the petition for dissolution; (5) awarding Wife an equalization payment for funds removed from a community account by Husband; (6) failing to address the disposition of the community's membership interests in the Family LLCs; and (7) refusing to award Husband attorney's fees and costs based on the parties' respective financial resources. In her cross-appeal, Wife asserts the court erred by refusing to award her attorney's fees and costs because, in her view, the court applied the wrong legal standard under A.R.S. § 25-324(A). We address each argument in turn.

## A. The Superior Court Abused Its Discretion by Inequitably Dividing the Waltann Property.

¶5 Husband argues the superior court incorrectly calculated the equity existing in the Waltann Property, a home Husband and Wife purchased during the marriage, and contends this miscalculation resulted in an inequitable division of the community. In response, Wife argues that the court was not required to divide all community property equally, just equitably, and points to another instance where the court divided a property unequally in favor of Husband.

¶6 We review the superior court's division of community property under A.R.S. § 25-318 for an abuse of discretion. *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010). "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). "A court abuses its discretion if . . . the record fails to provide substantial evidence to support the trial court's finding." *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012) (quoting *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007)).

¶7            In their respective pretrial statements and during the trial, both parties agreed that Husband should be awarded the Waltann Property, so the only issue before the court was the amount Husband owed to Wife for her share of the equity in the property. The parties also agreed that the principal balance of the mortgage on the Waltann Property was approximately $220,000, but disputed the market value of the home. Husband estimated the market value of the house to be $425,000, while Wife estimated it to be $475,000. In the portion of the decree addressing the Waltann Property, the court calculated Wife's share of the equity in the property by subtracting the principal balance of the mortgage ($220,000) from Wife's estimate of the market value of the home ($475,000) and then dividing the resulting figure in half (($475,000 - $220,000)/2). Using this formula, the court accurately determined Wife's share of the equity in that scenario would be $127,500. The court then reversed course, however, and resolved the parties' dispute over the market value of the Waltann Property by finding the market value of the property was the average of the experts' offered estimates, $450,000. Without any further explanation, the court then improperly applied the formula outlined by failing to subtract the principal balance of the mortgage from the market value of the property. Instead, the court divided the market value of the home in half ($450,000/2) and concluded that Wife's share of the equity was $225,000.

¶8            Neither party disputes the court's findings regarding the market value of the Waltann Property and principal balance of the mortgage attached to the home. But assuming the court's goal was to divide the Waltann Property's equity equally, we agree with Husband that the court inadvertently miscalculated the equalization payment owed to Wife. The $225,000 figure arrived at by the superior court is inconsistent with the method the court appears to have intended to apply. Under that formula, Wife's share of the equity should have been $115,000 (($450,000 - $220,000)/2 = $115,000). The court's failure to deduct the principal balance of the mortgage on the Waltann Property before calculating Wife's share of the equity is also inconsistent with the generally accepted understanding of the term "equity," which means "the difference between the value of the property and all encumbrances on it." *Equity*, Black's Law Dictionary (11th ed. 2019). Indeed, as Husband correctly points out, the result of this apparent mathematical error was that Husband was ordered to pay an amount to Wife equal to nearly 98% of the existing equity in the Waltann Property.

¶9            Wife is correct that the court's division of community property need not be entirely equal, and the court appears to have divided at least one other piece of property in a manner that was both not equal and

in Husband's benefit. *See* A.R.S. § 25-318 ("[The court] shall also divide the community, joint tenancy and other property held in common equitably, *though not necessarily in kind . . . .*" (emphasis added)). But as our supreme court explained in *Toth v. Toth*, 190 Ariz. 218, 221 (1997), the court must have a sound reason to deviate from a substantially equal division of community property. We can find nothing in the court's order or in the record to support deviating from a substantially equal division of community property concerning the Waltann Property, especially when the court divided nearly all other community assets equally. And when we total the disposition of all valued community assets in the decree, including the property referenced by Wife, the court's division of the Waltann Property still resulted in a significant windfall in Wife's favor. Thus, the court abused its discretion by inequitably dividing the equity existing within the Waltann Property. We vacate the portion of the decree dividing the Waltann Property and remand for further proceedings.

**B.     The Superior Court's Calculation of the Equitable Liens on the Martha Jane and Rudi Lane Properties Was Not Erroneous.**

**¶10**          Husband contends the superior court erred in its calculation of the equitable liens attributable to the Martha Jane Property and the Rudi Lane Property. "When the community contributes capital to separate property, it acquires an equitable lien against that property." *Valento*, 225 Ariz. at 481, ¶ 12. Because the existence and value of an equitable lien raises mixed questions of fact and law, our review is *de novo*. *Id.* at ¶ 11; *see also In re MH 2008-001752*, 222 Ariz. 567, 569, ¶ 7, n.3 (App. 2009) ("When an appeal presents a mixed question of law and fact, we defer to the superior court's factual findings but review *de novo* its legal conclusions."). This means that "[w]e will uphold the court's factual findings unless clearly erroneous or unsupported by any credible evidence," but will "draw our own legal conclusions from the facts found or implied by the [superior] court." *Valento*, 225 Ariz. at 481, ¶ 11. We address the court's calculation of each equitable lien in turn.

### 1. The Superior Court Correctly Calculated the Equitable Lien on the Martha Jane Property.

**¶11**          The superior court found that an equitable lien totaling $214—the amount calculated by Wife and her expert— was attributable to the Martha Jane Property and ordered Wife to pay Husband $107 for his share of the lien. Husband contends this figure is erroneous for two reasons. First, Husband argues that, at a minimum, the equitable lien should have been increased by $35,000 to account for entitlement fees paid on the

property because the funds were paid from a Charles Schwab bank account the court later determined was a community account. Second, Husband contends the court erred by disregarding other contributions allegedly made by the community for the benefit of the Martha Jane Property during the marriage.

¶12          At the outset, we reject Husband's assertion that the community nature of the Charles Schwab bank account from which the entitlement fees were paid is dispositive. During the trial, Wife and her expert testified that the entitlement fees were paid from separate funds Wife received from the sale of separate property before the marriage and then deposited into the bank account. Separate property does not lose its separate character, even when commingled with community funds, so long as "the separate property can still be identified." *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986). Thus, the dispositive question is not whether the bank account at issue was community or separate in nature, but whether the separate funds Wife deposited into the account could still be identified when the entitlement fees were paid. If credible evidence exists from which the court could have concluded the separate character of the funds was not lost, we will not substitute our judgment for that of the superior court. *Id.*

¶13          Here, the parties presented conflicting evidence regarding the source of the funds used to pay the $35,000 in entitlement fees for the Martha Jane Property. Both parties were limited because complete bank records from the relevant period were not available. Wife and her expert testified that the fees were paid from the separate funds deposited in the Charles Schwab bank account, and provided bank records from the relevant period that showed that: (1) at the time the funds from the sale of Wife's separate property were deposited, the account was still only in Wife's name, and was converted to a joint account at a later date; (2) the funds were utilized over the next two years for various expenses; and (3) $35,000 was wired out of the account on March 22, 2006.

¶14          Husband and his expert testified that the entitlement fees were paid from other community accounts and provided a ledger entry for a $35,000 check to "Martha Jane, LLC" from a different bank account. But the date listed on the check, March 24, 2006, was a mere two days after the wire transfer from the Charles Schwab account, and so the court could have reasonably concluded from this evidence that the check and wire transfer involved the same funds.

¶15          By concluding the equitable lien attributable to the Martha Jane Property was only $214, the court implicitly resolved the conflicting

evidence concerning the source of the payments in Wife's favor, and we defer to that finding. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) (Court of Appeals defers to the superior court determinations concerning the weight to give conflicting evidence). Based on the evidence, the court did not err by finding the community was not entitled to a lien for the $35,000 in entitlement fees paid on the Martha Jane Property.

**¶16** Turning to Husband's second argument, it is little more than an invitation for this court to reevaluate the credibility of the testimony and reweigh the conflicting evidence presented by the parties during the trial, something we will not do. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019) ("On appeal, we do not reweigh the evidence but defer to the family court's determinations of witness credibility and the weight given to conflicting evidence."). Relying on the check registers submitted by Husband and his statements, Husband's expert concluded that the community was also entitled to an equitable lien totaling $18,521 for other expenses associated with the Martha Jane Property in addition to the entitlement fees. Wife's expert countered this assessment by: (1) contesting the existence of one of the accounts listed in the check registers and (2) collecting statements from Wife with alternative explanations for many of the checks recorded in the check registers. Moreover, during cross-examination, Husband's expert admitted that because no bank statements from the relevant period were available, he could not verify whether the checks recorded in the check registers had been cashed or on what date they were cashed. Under these circumstances, the superior court could reasonably conclude that the evidence was insufficient to establish that the community had expended the funds claimed by Husband.

**¶17** Accordingly, the superior court did not err by finding the equitable lien attributable to the Martha Jane Property was the amount claimed by Wife, $214.

## 2. The Superior Court Correctly Calculated the Equitable Lien on the Rudi Lane Property.

**¶18** The superior court found that an equitable lien totaling $35,250—a similar amount to that calculated by Wife's expert—was attributable to the Rudi Lane Property and ordered Wife to pay Husband $17,625 for his share of the lien. Husband argues the court's calculation of this lien was erroneous for two reasons.

**¶19** First, Husband argues the court erred by failing to account for the alleged appreciation of the Rudi Lane Property during the marriage as

required by this court's decisions in *Drahos v. Rens*, 149 Ariz. 248 (App. 1985), and *Barnett v. Jedynak*, 219 Ariz. 550 (App. 2009). The community is entitled to an equitable lien not only for its contributions to separate property but also for a share of the amount the separate property appreciated during the marriage according to a set formula. *Drahos*, 149 Ariz. at 250; *Barnett*, 219 Ariz. at 555, ¶ 21. But Husband's argument assumes the Rudi Lane Property increased in value during the marriage. When property depreciates during the marriage, but positive equity remains, a different formula applies. In that situation, the court must "recognize a community lien in an amount equal to the reduction in principal indebtedness attributable to the community contribution." *Valento*, 225 Ariz. at 482, ¶ 15.

¶20  Here, the parties again presented conflicting evidence on whether the property had increased or decreased in value during the marriage. The parties agreed that the approximate market value of the home on the date of the marriage was $250,000. Wife's expert concluded the value of the Rudi Lane Property at the end of the marriage was $162,500, which was the middle figure of a value range provided by a Colorado realtor who inspected the home in early 2016. The realtor opined that the decrease in value was caused by severe damage to the home during the marriage that required significant repairs. Husband's expert, on the other hand, calculated the value of the Rudi Lane Property at $350,000 and based his assessment on comparisons with similar properties in the area. Although the superior court did not say so explicitly, the portion of the decree addressing the Rudi Lane Property resolved the conflicting evidence in favor of Wife, and we defer to that finding. *Gutierrez*, 193 Ariz. at 347, ¶ 13. Husband was, therefore, entitled to a lien for reimbursement of the community's contributions to the Rudi Lane Property during the marriage consistent with *Valento*, and the court committed no error by declining to apply the *Drahos/Barnett* formula.

¶21  Next, Husband contends the court erred by disregarding other community contributions Husband and his expert claimed were made to the Rudi Lane Property, including contributions for mortgage payments, property management services, and repairs. Wife's expert concluded the equitable lien for the Rudi Lane Property totaled $35,520. She based this total upon her calculation of the average annual maintenance for the property, a figure she arrived at by examining eight years of the parties' tax records. Wife's expert also conducted a tracing analysis of the parties' bank accounts from 2012 to 2016 to determine whether rental payments made by a tenant who lived in the Rudi Lane Property from 2004 to 2016 adequately covered the monthly mortgage payments owed for the

property. Although Wife's expert could not examine the parties' accounts before 2012 due to the unavailability of bank statements, she found that for the period she could examine, the rental payments made by the tenant adequately covered the mortgage. As a result, Wife's expert concluded the community was not entitled to a lien for contributions to the principal balance of the mortgage on the Rudi Lane Property.

¶22        Husband's expert found that the equitable lien attached to the Rudi Lane Property was $146,360. He arrived at this figure by adding the calculated value of three separate forms of contribution to the Rudi Lane Property alleged by Husband: (1) $57,860 for repairs, maintenance, and travel to the property; (2) $27,720 for property management services, which he calculated by assigning a fair market value for such services over 11 years; and (3) $60,780 for mortgage payments Husband claimed he consistently made from 2004 through 2012 because the Rudi Lane Property tenant underpaid the rent. On cross-examination, however, Husband's expert admitted that he "took [Husband's] word for it" concerning Husband's claim that the Rudi Lane Property tenant underpaid the rent and that there was no proof that Husband had ever received payment for property management-related services regarding the Rudi Lane Property.

¶23        On this record, the court was within its discretion to disregard Husband's expert, who relied heavily on Husband's word, in favor of the analysis provided by Wife's expert. Wife's expert's conclusions were adequately supported by her testimony and the materials contained within her report. To the extent the experts' testimony conflicted, we defer to the superior court's assessment of their credibility and the weight it gave to the conflicting evidence. *Gutierrez*, 193 Ariz. at 347, ¶ 13.

¶24        The superior court's calculation of the community lien on the Rudi Lane Property was not erroneous. The court, however, appears to have made a minor clerical error in its ruling by finding the community lien on the Rudi Lane Property was $35,250 instead of $35,520. Wife's expert testified that the lien was equal to $35,520, and her method for calculating the figure confirms that the number is correct. Thus, although we affirm the court's factual findings concerning the value of the equitable lien on the Rudi Lane Property, we direct the superior court to award Husband an additional $135 on remand to account for his share of the difference between the correct amount of the community lien and the amount awarded in the decree.

**C.    The Superior Court Committed No Error Concerning its Disposition of Corner MCR and the Solar Lease Rental Income.**

¶25    The parties disputed whether a community interest existed in Corner MCR, a limited liability company in which Wife owned a one-third membership interest. Corner MCR received the rental income from a 30-year lease of real property owned by Corner MCR and leased to a solar energy development and generation company. Wife moved for partial summary judgment, arguing Corner MCR and, by extension, the rental income from the solar lease, were her separate property. In his response, Husband countered that because Corner MCR was formed during the marriage using community labor, the company and any profits generated from it were community property.

¶26    The undisputed facts in Wife's motion and Husband's response established that in 1998, approximately six years before the marriage, as a gift from their grandmother Wife and her two siblings each received a one-third share of 200 acres of land located in Maricopa County (the "Maricopa Property"). During the marriage, Wife's one-third share of the Maricopa Property remained in her name only, and Husband was never given an interest or made a record owner of the property. In 2012, Wife and her siblings formed Corner MCR, transferred their respective one-third shares of the Maricopa Property to the company, and entered the solar lease through Corner MCR. Wife's siblings had little involvement in the process, and although Husband and Wife agreed the efforts required to secure the solar lease were considerable, they disputed the extent of each other's contributions.

¶27    Before the dissolution trial, after reviewing the parties' filings, the superior court issued an order granting partial summary judgment in favor of Wife. In its ruling, the court found: "The record is undisputed that [Wife] never transferred any title interest in the property to [Husband] during the marriage. Therefore, the property is [Wife's] sole and separate property." The court noted, however, that granting summary judgment in Wife's favor only decided the issue of Corner MCR's and the Maricopa Property's character, and it did not "preclude [Husband] from arguing he is entitled to an equitable interest in the property." Husband filed a petition for special action with this court challenging this order, but this court declined to accept jurisdiction.

¶28    The parties presented extensive evidence, expert testimony, and argument during the trial on the present-day value of the solar lease, whether that value could include future rental income Wife was due to

receive under the terms of the solar lease, and the parties' respective contributions to the formation of both Corner MCR and the solar lease. Husband argued the community had an interest in the solar lease rental income for the entire 30-year lease term because both Corner MCR and the solar lease were formed during the marriage. Wife contended that no authority supported Husband's claim for rental income beyond the date of service of the petition for dissolution, and that Husband had already been adequately compensated by the rental income Wife deposited into the parties' joint accounts, which totaled over $150,000.

¶29 In the decree, the superior court found that the income from the solar lease is Wife's separate property and any community interest in the revenue from the lease terminated on the date of service. The court also found that Husband "did not prove the income generated from the lease during the course of the marriage was expended on anything other than community expenses."

¶30 On appeal, Husband raises two arguments concerning the court's disposition of Corner MCR and the solar lease. First, Husband argues the court mischaracterized Corner MCR as Wife's separate property. Second, Husband contends the court erred by not awarding him a community lien for the community's contributions to the formation of Corner MCR and obtaining the solar lease.

### 1. Corner MCR, and, by Extension, the Solar Lease, Are Wife's Separate Property.

¶31 Husband, relying on an alleged distinction between real and personal property, and the presumption that all property acquired during the marriage is community property, asserts the character of Wife's membership interest in Corner MCR is separate from her separate property interest in the Maricopa Property. Husband also contends that although Wife contributed her separate property interest in the Maricopa Property as capitalization for the formation of Corner MCR, that contribution is not dispositive to the character of Corner MCR because Husband and Wife's community labor also contributed to its creation. We disagree.

¶32 The characterization of property as separate or community is a question of law that we review *de novo*. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). "A spouse's real and personal property that is owned by that spouse before marriage and that is acquired by that spouse during the marriage by gift, devise or descent, and the increase, rents, issues and profits of that property, is the separate property of that spouse." A.R.S.

§ 25-213(A). "Property takes its character as separate or community at the time of acquisition and retains that character throughout the marriage." *Schickner*, 237 Ariz. at 199, ¶ 22 (quoting *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 5 (App. 2007)). "Once property has been identified as separate or community, it remains such as long as it can continue to be segregated." *Nace v. Nace*, 104 Ariz. 20, 22 (1968); *see also Rowe v. Rowe*, 154 Ariz. 616, 619 (App. 1987) ("An asset that is separate property before marriage remains separate property after marriage until changed by agreement or operation of law."), *superseded by statute on other grounds as stated in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014). Thus, "[p]roperty purchased during marriage with separate property remains such." *Nace*, 104 Ariz. at 23. Separate property can, however, be "transmuted into community property by agreement, gift or commingling." *Cupp*, 152 Ariz. at 164.

¶**33** Here, a straightforward application of the principles surrounding the transmutation of separate property during the marriage leads to the conclusion that Wife's membership interest in Corner MCR is her separate property. It is undisputed that Wife's one-third interest in the Maricopa Property was acquired before the marriage and was, therefore, her separate property. It is also acknowledged that the sole purpose of the formation of Corner MCR was for Wife and her siblings to combine their separate interests in the Maricopa Property and enter the solar lease. Incorporation of a separate business or asset during the marriage does not transmute the character of the separate property to community property. *Hefner v. Hefner*, 456 P.3d 20, 25, ¶ 13 (Ariz. App. 2019). The form Wife's separate property took, whether as a one-third interest in the Maricopa Property or a one-third membership interest in Corner MCR, is immaterial because Wife's contribution of her separate property to Corner MCR remains directly connected to the one-third membership interest she ultimately received in the company. "To suggest otherwise elevates semantics over substance." *Id.*

¶**34** Moreover, there is no evidence in the record that Wife engaged in conduct during the marriage that could result in the transmutation of that separate interest into a community one. *See Cupp*, 152 Ariz. at 164. The parties did not agree to convert the Maricopa Property or Wife's membership interest in Corner MCR into community property during the marriage, and there is no evidence that Wife intended to gift her interest in the company to the community. As for transmutation by commingling, it is undisputed that the only asset related to Wife within Corner MCR is her share of the Maricopa Property and the solar lease attached to it. The separate identity of Wife's one-third interest in the

Maricopa Property remained intact. And although Husband may be correct that substantial community labor was involved in Corner MCR's formation, those efforts do not alter the separate character but may merely entitle the community to some share of the profits generated by the community's contributions. *See Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979) ("We emphasize, however, that the separate property of the spouse remains separate. It is merely the profits or the increase in value of that property during marriage which may become community property as a result of the work effort of the community."). Accordingly, the court correctly found that Wife's one-third interest in Corner MCR and, by extension, her interest in the solar lease, was her separate property.

> **2. The Court Did Not Err by Finding the Solar Lease Income Was Wife's Separate Property and the Community Had Been Compensated for the Services it Provided in Forming Corner MCR and Entering the Solar Lease.**

¶35　　　　Husband maintains the court erred by finding the community had been adequately compensated for the community labor attributable to the profits Wife received from Corner MCR and the solar lease during the marriage. In *Cockrill v. Cockrill*, the court held that because profits generated from separate property can be community property depending on whether they result from the labor of a spouse or the inherent nature of the separate property, the superior court must determine whether and to what extent the profits generated from separate property during the marriage are a product of each and to apportion them accordingly. 124 Ariz. at 52, 54. "[T]he burden is upon the spouse who contends that the increase is also separate property to prove that the increase is the result of the inherent value of the property itself and is not the product of the work effort of the community." *Id.* at 52. The court also concluded the superior court had broad discretion to select a method for apportionment that would "achieve substantial justice between the parties." *Id.* at 54. The decision outlined three such approaches:

> In the case of real estate, the owner of the real property can be awarded its rental value, with the community being entitled to the balance of the income produced from the lands by the labor, skill and management of the parties. Another approach is to determine the reasonable value of the community's services and allocate that amount to the community, and treat the balance as separate property attributable to the inherent nature of the separate estate. Finally, the trial court may simply allocate to the separate property a reasonable rate of

return on the original capital investment. Any increase above this amount is community property.

*Id.* (citations omitted).

**¶36**　　　　Here, because Corner MCR and the solar lease were both formed during the marriage, a community interest equal to the profits resulting from the community labor utilized in their creation was established. *See Cockrill*, 124 Ariz. at 52; *see also Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 252–53, ¶¶ 12–14 (App. 2008). Under *Cockrill*, the superior court was required to apportion the profits that resulted from the community's labor and those that were attributable to the inherent nature of the separate property. 124 Ariz. at 54. The decree adopted an approach analogous to the second method of apportionment contemplated by *Cockrill*. By finding Husband had not proven the income generated from the solar lease had been utilized "on anything other than community expenses," the court implicitly found that the community had already been adequately compensated for the services it provided in the formation of Corner MCR and obtaining the solar lease by the rental income Wife supplied to the community. This finding is consistent with *Cockrill*'s mandate to "achieve substantial justice between the parties." *Id.*

**¶37**　　　　From the formation of the lease in 2012 to the end of the marriage in April 2016, Wife deposited rental income from the solar lease exceeding $150,000 into the parties' joint accounts. The largest estimate of the community labor associated with the formation of Corner MCR and the solar lease presented by Husband attributed 720 hours of community labor to Wife. Under this estimate, the community received compensation for that labor equal to over $192 per hour. Thus, the court did not abuse its discretion by finding the community had already received funds equal to "the reasonable value of the community's services." *Cockrill,* 124 Ariz. at 54.

**¶38**　　　　As for the profits generated by the solar lease during the marriage, we agree with the superior court's conclusion they remained Wife's separate property. Wife met her burden of showing that the solar lease rental income was the result of the "inherent value of the property itself and [] not the product of the work effort of the community." *Cockrill*, 124 Ariz. at 52. The evidence established that once the solar lease was finalized, no further community efforts were required to receive the rental income. Under the terms of the solar lease, the leasing company is responsible for managing the solar power generation operation and for paying all taxes associated with the operation of the facilities. Thus, the profits Wife received from Corner MCR through the solar lease during the

marriage stemmed, not from the community's efforts, but the inherent value of Wife's separate property as quantified by the lease. Accordingly, the court correctly apportioned the solar lease rental income "as separate property attributable to the inherent nature of the separate estate." *Id.* at 54.

**D.     The Superior Court Did Not Have the Authority to Order Husband to Repay a Separate Debt to Wife's Parents in a Dissolution Proceeding.**

**¶39**          Husband argues the superior court lacked subject matter jurisdiction to order him to pay Wife's parents $4779 to reimburse them for health-insurance coverage Wife's parents allegedly provided after service of the petition for dissolution.[2] We agree.

**¶40**          We review questions involving the court's jurisdiction *de novo. In re Marriage of Thorn*, 235 Ariz. 216, 220, ¶ 16 (App. 2014). "Despite the application of equitable standards in a dissolution proceeding, it remains a statutory action, and the trial court has only such jurisdiction as is granted by statute." *Weaver v. Weaver*, 131 Ariz. 586, 587 (1982). "Title 25 defines the boundaries of a dissolution court's jurisdiction, and the court may not exceed its jurisdiction even when exercising its equitable powers." *Id.* "The primary focus for a determination of the trial court's authority is an examination of the relevant statute." *Martin v. Martin*, 156 Ariz. 452, 456 (1988).

**¶41**          Under the relevant statute, A.R.S. § 25-318(A), the superior court is authorized to "assign each spouse's sole and separate property to such spouse" and to "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind." This authority includes the power to allocate responsibility for the payment of community debts to a spouse. *Lee v. Lee*, 133 Ariz. 118, 123 (App. 1982). Pursuant to A.R.S. § 25-318(E)(2), the court may also "impress a lien on the separate property of either party . . . in order to secure the payment of . . . . [c]ommunity debts that the court has ordered to be paid by the parties." However, as explained in *Lee*, "[t]he allocation of community liabilities determines the rights and obligations of parties before the court

---

2       Wife asserts Husband waived this argument by failing to object to her request for reimbursement at trial. However, "challenges to subject matter jurisdiction may be raised at any time, including for the first time on appeal." *Health for Life Brands, Inc. v. Powly*, 203 Ariz. 536, 538, ¶ 12 (App. 2002).

only with respect to each other." 133 Ariz. at 124. In other words, the statute only authorizes the superior court to *allocate responsibility* for community debts, and "may not effectively validate and discharge a contested debt . . . by ordering one party to pay the debt directly under pain of contempt." *Id.*

**¶42** In this case, Husband is correct that *Lee* controls if the alleged debt was a community debt. The superior court does not have the power in a dissolution proceeding to issue a judgment for payment of a community debt allegedly owed to a third party. 133 Ariz. at 123–24. But the court's error here goes beyond a mere overextension of its power to allocate community debts because this alleged debt is a separate one. Wife claimed that her parents had paid for the parties' health-insurance coverage beginning in 2012 to support her decision to leave her employment. But in her pretrial statement and during the trial, Wife only sought reimbursement on behalf of her parents for payments made for Husband's portion of that coverage *after* service of the petition for dissolution. All property, and by extension, all debt, "that is acquired by a spouse after service of a petition for dissolution of marriage [] is [] the separate property of that spouse if the petition results in a decree of dissolution of marriage." A.R.S. § 25-213(B).

**¶43** The situation here is akin to the one contemplated by our supreme court in *Weaver v. Weaver*. There, the court held the superior court had no jurisdiction "to allow a money judgment for damage by one spouse to the separate property of the other spouse in a dissolution proceeding." *Weaver*, 131 Ariz. at 587. In so holding, the court noted that the superior court's jurisdiction concerning separate property was limited only to assigning each spouse their separate property and imposing a lien according to A.R.S. § 25-318(E). *Id.* That remains true today. There was no evidence of a contractual relationship between Wife's parents and Husband, and no basis from which to conclude that Husband had agreed to reimburse parents for what appears to have been a gift. Thus, Wife had no basis from which to assign a separate debt to Husband, and the superior court did not have the authority to order Husband to pay a separate debt allegedly owed to a third party. The portion of the decree ordering Husband to pay Wife's parents is void and must be vacated.

**E.      The Superior Court Did Not Abuse its Discretion by Ordering Husband to Pay an Equalization Payment to Wife for Funds Removed from Community Bank Accounts.**

**¶44** At the trial, Wife testified that from November 2016 to January 2018, Husband had withdrawn $44,196.79 in community funds

from two joint Charles Schwab bank accounts and placed them into a Wells Fargo joint bank account that the parties had agreed would be Husband's account while the dissolution proceedings were pending. Wife also testified that once she realized Husband was depleting funds from the Charles Schwab accounts, she withdrew the remaining $12,989.30 and that she did not know whether any money remained in the Wells Fargo account. Wife requested that the court order Husband pay her a $15,603.74 equalization payment to divide the total funds existing at the time of service in the Charles Schwab accounts equally.

¶45 During his testimony, Husband admitted that he had withdrawn and used around $40,000 from the community bank accounts, but claimed: (1) his withdrawal equaled portions of Wife's solar lease rental income that they agreed he was entitled to while the dissolution proceedings were pending; and (2) he used the funds for community expenses "like [Wife's] car payment and insurance payments and cable bills and APS bills." In the decree, the superior court found Husband had transferred $44,196.79 in community funds to his separate Wells Fargo account and that Husband owed Wife $15,603.74 as an "equalization share of community funds he has already received."

¶46 Husband argues the superior court erred by mischaracterizing the joint Wells Fargo account as his separate account and not crediting his assertion that all withdrawals and expenditures from the funds taken out of the Charles Schwab accounts were for the benefit of the community. Again, we review the superior court's division of community property for an abuse of discretion. *Valento*, 225 Ariz. at 481, ¶ 11.

¶47 We see no error in the court's conclusions here. At the outset, Husband's assertion that the court's characterization of the Wells Fargo account was incorrect has no bearing on this issue. The operative question is not whether Husband deposited the community funds in a community account or separate account; it is whether he showed that he used the withdrawn funds to pay for community expenses or that Wife agreed to the withdrawals. *Gutierrez*, 193 Ariz. at 346, ¶ 7 ("The spouse making the withdrawals should bear the burden of showing that the money was spent to benefit the community."). If Husband did, his claim that the court lacked reasonable evidence to find the equalization payment equitable might have merit; if he did not, the court was well within its discretion to order he pay Wife to equalize the share of the Charles Schwab accounts.

¶48 However, the evidence within the record Husband points to in his brief—text messages between Wife and Husband and bank

statements concerning the Wells Fargo account—at best only partially support his testimony. The text messages, which date back to a few months before Husband began removing money from the Charles Schwab accounts, show that Wife "presume[d]" the parties would split the solar lease rental income until the divorce was finalized. But Wife also claimed the rental income was "100% sole and separate and my income," and nothing in the conversations indicate Wife intended her statements as blanket authorization to withdraw funds from the Charles Schwab accounts. As for the bank statements, some of the expenses Husband incurred after depositing funds from the Charles Schwab accounts into the Wells Fargo account, *might* represent community expenses. But many other expenditures following the deposits were personal, undercutting Husband's claim that he used the funds for community expenses.

**¶49** Given these ambiguities and our deference to the superior court's assessment of Husband's credibility, we cannot say the court abused its discretion by finding his explanations lacking and that the equalization payment to Wife was warranted. *See Lehn*, 246 Ariz. at 284, ¶ 20.

**F. The Superior Court Should Have Addressed the Disposition of the Community Interests in the Family LLCs and Must do so on Remand.**

**¶50** In their respective pretrial statements, both parties alleged Wife's parents had gifted them community membership interests in the Family LLCs and that a provision of the operating agreements for each company required that they place these interests in a trust for the benefit of their two children upon the dissolution of their marriage. The operating agreements for each company showing the community interests and the relevant trust provisions were entered into evidence. At the beginning of the trial, Husband's counsel explained to the court that disposition of the community interests in the Family LLCs, including the creation and control of the trusts contemplated by the operating agreements, remained unresolved.

**¶51** During the trial, both Wife and Husband testified about the community interests in the Family LLCs and the dispute over the trust provisions. However, Wife's counsel objected to the court deciding the issue, arguing that because their disposition was controlled by the operating agreements and the Family LLCs had not been joined in the dissolution proceeding, the community interests in the Family LLCs were "outside of the jurisdiction of [the superior court]" and "outside the scope

of th[e] matter." In the decree, the superior court did not address the parties' arguments concerning the Family LLCs or the trust provisions.

¶52        Before this court, Husband argues the superior court erred by not addressing the community's interests in the Family LLCs, the effect of the operating agreements, and the terms of the trusts contemplated by them. Wife counters that the court implicitly and correctly found that it did not have jurisdiction to decide these issues. We review matters of law, including questions of jurisdiction, *de novo*. *Thomas v. Thomas*, 220 Ariz. 290, 292, ¶ 8 (App. 2009).

¶53        We agree with Husband that the court's failure to make any findings concerning the Family LLCs in the decree was error. As the facts outlined above demonstrate, both the property at issue and the disagreement over whether the court had the authority to address it were presented to the court, and neither party disputes the community interests in the Family LLCs. Although the question of *how* to divide community property equitably to each spouse is left to the superior court's discretion in a dissolution proceeding, the actual division of identified community property is not. A.R.S. § 25-318(A) provides:

> In a proceeding for dissolution of the marriage, . . . the court shall assign each spouse's sole and separate property to such spouse. . . . [I]t *shall also divide* the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct.

(Emphasis added.)

¶54        Wife attempts to justify the court's silence by arguing that it can be inferred the court found her arguments concerning its jurisdiction persuasive and "determined that this issue was not properly before the [c]ourt." But Wife has not persuasively shown how the superior court lacked the authority to address the questions surrounding the community's interests in the Family LLCs and effect of the operating agreements in some manner. The disposition of the community property itself lies within the court's authority. A.R.S. § 25-318(A). And to the extent that the dispute required joinder of third parties, the court could have joined them on its motion, A.R.S. § 25-314(D), or granted leave for Husband or Wife to join those parties according to Arizona Rule of Family Law Procedure 33(c). Thus, while "[w]e will affirm the trial court's decision if it is correct for any reason," we cannot conclude Wife's asserted explanation for the court's

failure to address the Family LLCs is supported here. *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

¶55 Ultimately, without any findings in the decree to explain the court's rationale for not addressing the community's interests in the Family LLCs, we lack an adequate basis from which we can conclude the issue was correctly decided. The equitable division of these assets must, therefore, be addressed on remand.

**G. The Superior Court Should Address the Parties' Requests for Attorney's Fees and Costs on Remand.**

¶56 Both parties argue the superior court erred by denying their respective requests for attorney's fees and costs under A.R.S. § 25-324, for different reasons. However, because we have found error necessitating further proceedings, we need not address whether the decision regarding attorney's fees and costs was erroneous, as the parties may reassert those claims after whatever proceedings are required. Accordingly, we vacate the portion of the decree denying the parties' requests for attorney's fees and costs.

## ATTORNEY'S FEES AND COSTS

¶57 Both parties request an award of attorney's fees and costs on appeal under A.R.S. § 25-324. After considering the financial resources of the parties and the reasonableness of their positions on appeal, in the exercise of our discretion, we decline to award attorney's fees and costs.

## CONCLUSION

¶58 The portions of the decree concerning the characterization of Corner MCR and the existence of any community liens related to it, the community liens on the Martha Jane Property and Rudi Lane Property, and reimbursement to Wife for funds removed by Husband from community accounts are affirmed. But we vacate portions of the decree concerning the division of the Waltann Property, reimbursement to Wife's parents for post-petition health-insurance payments, and attorney's fees and costs and remand for further proceedings consistent with this decision.

